[CHANCERY.  FRAUDULENT DEFD.]

STEPHEN HARDING and Others, *Appellants*,

v.

ASA HANDY and CALEB WHEATON, *Respondents.*

ASA HANDY and CALEB WHEATON, *Appellants*,

v.

STEPHEN HARDING and Others, *Respondents.*

There must be sufficient equity apparent on the face of the bill to warrant the Court in granting the relief prayed ; and the material facts on which the plaintiff relies must be so distinctly alleged as to put them in issue.

A Court of equity has jurisdiction of a suit brought by heirs at law to set aside a conveyance of lands obtained from their ancestor by undue influence, he being so infirm, in body and mind, from old age, and other circumstances, as to be liable to imposition, although his weakness does not amount to insanity.

The same jurisdiction may be exercised where one of the heirs at law has, with the consent of the others, taken such a deed, upon an agreement to consider it as a trust for the maintenance of the grantor, and, after his death, for the benefit of his heirs, and the grantee refuses to perform the trust.

Under what circumstances such a conveyance may be allowed to stand as security for actual advances and charges, and set aside for all other purposes.

In such a case, not depending on the absolute insanity of the grantor at the time of executing the conveyance, the Court may determine the question of capacity without directing an issue.

The verdict of a jury as to the *sanity* of the grantor at the time of executing such a conveyance, would not be conclusive, the Court being competent to determine for itself the degree of weakness, or of imposition, which will induce it to set aside the instrument.

Exceptions to the report of a Master are to be regarded by the Court only so far as they are supported by the special statements of the

Master, or by a distinct reference to the particular portions of testimony on which the party excepting relies. The Court does not investigate the items of an account, nor review the whole mass of testimony taken before the Master.

Rules of practice in accounting before a Master.

In a suit in equity brought by heirs at law to set aside a conveyance obtained from their ancestor by fraud and imposition, a final decree for the sale of the property cannot be pronounced, until all the heirs are brought before the Court as parties, if they are within the jurisdiction.

If all the heirs cannot be brought before the Court, the undivided interest of those who are made parties may be sold.

THESE were cross appeals from the decrees of the Circuit Court of Rhode Island.

The bill filed in the Court below by the appellants, Harding, and Nancy his wife, and Sterling Wheaton, alleged, that they, with four others not made parties to the suit, together with Caleb Wheaton, one of the defendants, were entitled, as heirs at law of Comfort Wheaton, deceased, to the real property mentioned in the bill, and situate in the State of Rhode Island. That Comfort W., about the year 1802, began to exhibit symptoms indicating a loss of intellect, and soon became, from various causes mentioned in the bill, incompetent to the management of his estate, and died in 1810. That, under these circumstances, the defendant. Caleb W., (his son,) and who acted as well for himself, as in behalf of the plaintiffs, and the defendant Handy, (the son-in-law of Comfort W., entered into an agreement to endeavour to take his estate out of his hands, and to preserve it for the benefit of his heirs at law. That it was agreed that Comfort W. should be prevailed on to convey his real property to

Handy, for a nominal consideration, who should forthwith execute an instrument of writing, declaring that he took and held the same in trust; first, to provide for the decent support of the grantor, during his life; and, after a full remuneration for his expenses and trouble in that respect, to hold the residue of the estate for the benefit of the heirs at law. That, on the 9th of May, 1805, Handy did procure such conveyance, for the nominal consideration of 2,178 dollars, from Comfort W., and entered upon, possessed, and enjoyed, the property in question; but that he refused to execute any declaration of trust as he had agreed, but held the property, claiming it as his own. The bill then alleged, that the defendant, Caleb W., after the death of his father, Comfort W., acting on behalf, and for the benefit of, the heirs, procured letters of administration of the personal estate of Comfort W. to be issued by the proper Court, and caused such further proceedings to be had, as that the administrator exposed to sale the real property before mentioned, which had been conveyed to Handy, and that Caleb W. became the purchaser thereof, for the general benefit of the heirs. That various suits at law had resulted from these transactions, (and, among others, an ejectment brought by the defendant, Handy, against the defendant, Caleb W.,) by which the value of the property had been much deteriorated. The bill then prayed for an account respecting the property; that a decree might be rendered, exonerating it

1826.

Harding
v.
Handy.

Handy
v.
Harding.

from the deeds to the defendant, Handy, after satisfying his just claims, and ordering one fifth part of the real estate to be set off to the plaintiff, Nancy H., and one fifth to the plaintiff, Sterling W.; and for general relief.

The answer of the defendant, Handy, denied that Comfort W. was incapable of conveying his property when the deeds of the 9th of May, 1805, were executed; and insisted that his intellect was perfectly sound at that time. It also denied, that he, the defendant, purchased as a trustee, and averred, that he was a purchaser for a valuable and full consideration. The answer of the other defendant, Caleb W., admitted the allegations of the bill, and submitted to any decree the Court might think equitable.

A great mass of testimony taken in the Court below, appeared in the record, which was very contradictory, as to the capacity of Comfort W. to make the conveyance in question.

The Circuit Court, by its interlocutory decree, directed that the deeds of the 9th of May, 1805, should be set aside, as having been obtained by false impressions made on a mind enfeebled by old age, and various other causes; and that an account of the receipts and disbursements of the defendant, Handy, should be taken, and that he should be credited for all advances made, and charges incurred, for the maintenance of Comfort W. during his lifetime, and for repairs and improvements made on the real estate. Exceptions were filed by both parties to the report.

which was confirmed by the Court below. The final decree declared, that the real estates conveyed to the defendant, Handy, should stand charged with the amount of the balance of the account due to him; that the same should be sold, and the proceeds brought into Court; that the said balance should be paid to him, deducting his proportion of the charges, &c. and the residue, deducting their proportions, &c. should be paid over, and distributed among the heirs at law of Comfort W. If there be any such heirs, not made parties, they to be at liberty to come in under the decree, and receive their shares, paying their proportions of costs and expenses, otherwise to be excluded. That each party before the Court should pay his own costs, excepting the fees of the officers of the Court, which should be a charge on the property, and borne by the parties according to their respective proportions of interest in the proceeds of the sale.

From this decree both parties appealed.

Mr. *Wheaton,* for the original plaintiffs, made the following points:

1. That the decree ought to be reversed, so far as it declared, that the real property should stand charged with the advances made by the defendant, Handy.

2. That it ought, in all other respects, to be affirmed.

On the first point, he contended, that the deeds having been obtained by the imposition of the grantee on the grantor, the property ought not

*1826.*

Harding
v.
Handy.

Handy
v.
Harding.

*Feb. 22d*

1826.

Harding
v.
Handy.

Handy
v.
Harding.

to stand charged with the expenses incurred by the former. That, even supposing him to have held as a trustee during the lifetime of the plaintiff's ancestor; after that period he ceased to hold in that capacity, and became a *malæ fidei* possessor, who was not entitled to be allowed for improvements made on the land.[a]

On the second point, he argued, (1.) as to the objection made in the Court below, of the defect of jurisdiction in that Court ; that the words of the Judiciary Act of 1789, c. 20. s. 16. providing that suits in equity should not be sustained in the Courts of the Union, " in any case where plain, adequate,. and complete remedy, can be had at law," were not intended to abridge the equity jurisdiction of those Courts ; that it had been frequently determined, that the proceedings in those Courts were to be according to the English system of equity, both as to principles, practice, and jurisdiction;[b] that fraud and trust were familiar subjects of cognizance in the Court of Chancery ; and that equity often interfered to redress fraud, even after a verdict and judgment at law.[c] That this was not a case analogous to that which had been cited in the proceedings below, where the only ground of equitable interference was a discovery sought to establish the

a Green v. Biddle, 8 *Wheat. Rep.* 77.—83.   2 *Ves. sen. Rep.* 516.   2 *Ves. Rep.* 281.   *Belt's Supplement,* 345. 396.   1 *Bro. Ch. Rep.* 420.

b Robinson v. Campbell, 3 *Wheat. Rep.* 221.   United States v. Howland, 4 *Wheat. Rep.* 108.

2 *P. Wms.* 425.   2 *Vern. Rep.* 146.   2 *Ves. sen. Rep.* 628.

fraud, and the plaintiff having failed in the discovery, and having a complete remedy at law, should not be allowed to proceed in equity.[a]

2. Another objection was, that this was an attempt to establish a trust by parol evidence, contrary to the statute of frauds. The Court below did not consider it necessary to determine this point, because, at all events, there was a *resulting trust* for the heirs, (after allowing for advances, &c.) which, even in England, might, unquestionably, be established by parol. But a comparison of the English statute of frauds, 29 Charles II. c. 3. with the provisions of the local statute of Rhode Island on the same subject, would show, that the latter did not extend to trusts, and, therefore, there could be no question of the admissibility of parol evidence in this case.

3. It was a case of imposition practised by a son-in-law upon his father-in-law, an old man, infirm in body and mind, morally and physically incapable of managing his own affairs, and of resisting the influence and importunities of the other party, standing in that intimate relation. It was analogous to other cases of fraudulent and hard bargains made with expectant heirs, and other persons standing in peculiar relations, rendering them liable to imposition. The great leading case on the general analogy, was that of *Chesterfield* v. *Jansen*,[b] which was not cited

a Clarke v. Russell, 7 *Cranch's Rep.* 89.
b 2 *Ves. sen. Rep.* 157.

as a direct authority, but as illustrating the general principle. Lord Hardwicke there lays down the rule on which the Court of Chancery proceeds, and classifies the cases in which it will interfere. These are, 1. Actual fraud. 2. Such as is apparent, from the nature of the bargain itself, as being fragrantly unequal. 3. A kind of fraud which may be presumed from the circumstances and condition of the parties contracting. 4. Which may. be inferred from the nature and circumstances of the transaction, as being an imposition and deceit on other persons not parties to the fraudulent agreement. 5. Fraud, infecting, catching bargains with heirs, reversioners, expectants, &c. There are to be found in the books a great variety of applications of these principles. Thus, in *Clarkson* v. *Hanway,*[a] the suit was brought by an heir at law to set aside a conveyance by his ancestor, who is described as a " weak man," 72 years old, who had conveyed his estate for a small annuity. The conveyance was set aside on those circumstances alone, by the Master of the Rolls, and decree confirmed, on appeal, by Lord Macclesfield. In *Bates* v. *Graves,*[b] the bill was filed by a son, to set aside a conveyance, (which was confirmed by a will,) by his father, to a son-in-law, under circumstances of fraud, and undue practices, upon the weakness of the grantor. Lord Thurlow and Lord Rosslyn concurred in holding these circumstances to be sufficient to annul the convey-

a  2 *P. Wms.* 203.          b  2 *Ves. jr. Rep.* 287.

ance, though the party was not a lunatic. In a still more recent case,[a] Lord Eldon relieved against a bargain with an expectant heir, where there was no fraud or imposition, upon the ground of inadequacy of consideration, where there was an inequality of condition in the parties. Mere inadequacy of consideration was held insufficient, but, coupled with the other circumstance, was deemed a sufficient ground to annul the contract. In *Huguenin* v. *Baseley,*[b] a settlement by a widow, upon a clergyman and his family, was set aside, as having been obtained by undue influence, and abused confidence in the party, as the agent of the grantor's affairs, upon the principle of public policy and utility, applicable to the analogous cases of guardian and ward, attorney and client, &c. It was there earnestly contended, that the law of England does "not prevent a prodigal disposition *by a person of sound mind.*" But the argument was overruled by Lord Eldon; and the words of Sir S. Romilly, *arguendo,* in that case, are remarkably pertinent to the present: "Though no direct authority is produced, your lordship, dispensing justice by the same rules as your predecessors, upon such a subject, not confined within the narrow limits of precedent, will, as a new relation appears, look into the principles that govern the human heart, and decide accord-

1826.

Harding
v.
Handy.

Handy
v.
Harding.

---

*a* 16 *Ves. Rep.* 512. See also Oliver v. Court, 8 *Price's Excheq. Rep.* 127.

*b* 14 *Ves. Rep.* 273. Griffiths v. Robins, 3 *Madd. Rep.* 191.

ingly." The same principles and authorities had been applied, by a Court of justice of our own country, to a case almost the same with the present in all its material circumstances.[a] They are applied in every system of jurisprudence having a due regard to the protection of the weak from the artifices of those who have the means of unduly influencing or controlling their conduct. Thus, in the countries governed by the Roman law, the provisions of positive law prohibiting donations *inter vivos*, between persons standing in certain peculiar relations of mutual confidence and dependence, are extended by equity to other relations of a similar character, and falling within the reason of the prohibition.[b] The Court below seems to have considered, that it might have been justified, on these principles, in declaring the deeds in question utterly void, though, in framing its decree, it thought proper to take a more mitigated view of the defendant's conduct.

Mr. *Coxe*, (with whom was Mr. *Webster*,) for the defendant, Handy, argued, (1.) That there was a defect of jurisdiction in the Court below, proceeding as a Court of equity. A complete and adequate remedy at law existed. If the deeds were invalid on the ground of fraud and imposition, that question might be tried in an

a Whelan v. Whelan, 3 *Cowen's Rep.* 537.
b *Pothier, Traité de Donations*, s. 1.

action at law.   It had been  so  tried and deter-
mined.[a]

2. It appeared, on  the face of  the bill itself,
that there were other children of Comfort W.
who are his heirs at law, but who had not been
joined in the present suit.   They were equally
interested with the other  plaintiffs, and should,
therefore, have been joined.   Their interests are
also affected by the decree.   It is not too late to
take advantage of  this objection.[b]

3. The bill  contained multifarious  matters
which ought not to be joined.  Each of the defend-
ants claimed to  have the  legal estate in him, in
opposition to each other.   There was no privity
between them  as  to their respective interests;
and before the plaintiffs could have any interest
in vacating the deeds of the defendant, Handy,
the deed of the defendant, Caleb W., must be
removed.   The  establishment of their  right
against one defendant was a prerequisite to their
calling upon the other to answer.

4. The main object of the bill, and that attain-
ed by the decree, was to  enforce specifically a
parol agreement, alleged to have been made be-
tween the two defendants, denied by the defend-
ant, Handy, and not proved by any competent
testimony.   The contract proved is wholly dif-
ferent from that alleged.   Such a contract as is

*a* Smith v. M'Iver, 9 *Wheat. Rep.* 532.
*b* *Coop. Eq. Pl.* 33.  *Pr. Reg.* 299.   *Bart. Eq.* 31. n. 1
*Hinde's Ch.* 2. 1 *Vern. Rep.* 100.  5 *Wheat. Rep.* 313.  9 *Wheat.
Rep.* 842.

1826.

Harding
v.
Handy.

Handy
v.
Harding.

alleged, and now attempted to be enforced, is deficient in mutuality.[a]   It, also, virtually admits the sanity and competency of the grantor, Comfort W., which is now made the ground for setting aside the deeds.

5. If, however, he was in the state of mind in which the bill represents him, the plaintiffs, by their agent, participated in the fraud, and, therefore, have no right to call upon a Court of equity to interfere, to relieve them from the web in which they have entangled themselves.[b]

6. The plaintiffs are barred by lapse of time.

7. The decree sanctions an attempt to establish a contract concerning lands, and a trust in real estate, by parol evidence.   The proof of a trust lies on the party who alleges it.[c]   In this case, the conveyances are absolute on the face of them, and the evidence of a trust is wholly *aliunde*.   To warrant the Court in decreeing the execution of a parol declaration of trust, the evidence should be plain and unambiguous.[d]   The taking the conveyance was not in part performance.   The act of part performance must be such as the party would not have done with any other view than in execution of the alleged agreement.[e]   This secret trust, and the allegation of part performance, are both denied by the an-

a  *Newl. Contr.* 152.

b  14 *Ves. Rep.* 288.

c  Prevost v. Gratz, 1 *Peters. Rep. C. C.* 364.   S. C. 6 *Wheat. Rep.* 494.

d  *Wharton's Dig.* 580.

e  4 *Ves. jr. Rep.* 108.

swer, and this settles the question.[a]   The secret
trust cannot be proved by parol testimony, espe-
cially where it is made with a stranger to the es-
tate without consideration.[b]

8. The bill does not distinctly allege the in-
competency of Comfort W., and the imposition
said to have been practised on him, so as to put
these facts in issue.   The decree must conform
to the *allegata*.  Some substantial ground must
be stated.  Old age alone is not sufficient.[c]

9. If these facts had been ever so distinctly put
in issue, they have not been proved.   Where
fraud is alleged, it must be fully proved, and will
not be presumed[d]   The presumption of law is
in favour of a party executing an instrument.[e]
The question is confined to the state of mind at
the time of executing the instrument.[f]   Two
witnesses deposing *sanæ menti*, are to be credit-
ed before a hundred proving insanity.[g]   The
law will not measure a man's understanding, and
a partial diminution of intellect is not sufficient
to invalidate the deeds; nor is there any such
thing as an equitable incapacity, where there is a

1826.

Harding
v.
Handy.

Handy
v.
Harding.

a 6 *Ves. Rep.* 39.

b 2 *Johns. Ch.* 405.   7 *Cranch's Rep.* 176.   11 *Mass. Rep.*
342.   13 *Mass. Rep.* 443.   4 *East's Rep.* 577. n.   1 *Eden's
Rep.* 515.   1 *Cox's Rep.* 15.

c 1 *Ves. jr.* 19, 20.   4 *Dessauss.* 518.

d *Cas. temp. Talb.* 116.   1 *Madd. Ch.* 208.

e 5 *Johns. Rep.* 158.   3 *Bac. Abr.* 527. 540.

f 13 *Ves. Rep.* 88.   8 *Mass. Rep.* 371.

g *Co. Litt.* 246. b. note (1.)

1826.

Harding
v.
Handy.

Handy
v.
Harding.

legal capacity.[a] Fraud of this description is equally cognizable at law, and in equity; and the Court of Chancery will not set aside a will of lands on that ground, without directing an issue.[b]

10. The decree is inconsistent both with the allegations in the bill, and with itself. It is a bill with a double aspect. It charges incompetency in the grantor, and prays that the estate may be exonerated; it also charges a trust, and prays an account, and general relief. The decree declares that the grantor was incompetent, and his conveyance invalid, and yet does not exonerate the estate from them. A deed cannot be set aside partially on the ground of fraud. If set aside at all, it must be in *toto*.[c] The decree proceeds on the ground of imposition, and grants a relief which could only apply to the pretended trust, which necessarily implies capacity in the grantor. It does not pass on the conveyance from the administrator of Comfort W., to the defendant, Caleb W. So long as the legal estate remains in him under that deed, the right of the plaintiffs is a nonentity.

11. The Master's report is erroneous on several grounds, and ought to have been set aside. (1.) Because, in taking the account, he refused to receive the testimony of the defendant, Handy, when it was competent and credible. (2.) The

a  1 *Madd. Ch.* 223, 224.
b  3 *Bac. Abr.* 321.  2 *Atk. Rep.* 424.  3 *Atk. Rep.* 17. 2 *Ves. jr.* 287.  1 *Madd. Ch.* 206.
c  2 *Ves. jr. Rep.* 408.  3 *Atk. Rep.* 281.

Master required evidence of the consideration of a promissory note, when the signature was sufficiently proved.[a] (3.) He held, also, that where a party charges himself with a certain sum, and at the same time discharges himself, it shall be evidence against him, but not for him.[b] The other exceptions to the Master's report were also minutely discussed; but it is not thought necessary to state them, as they are enumerated, and fully examined, in the judgment of this Court.

12. The final decree is erroneous in several particulars. (1.) In directing a sale of the property under the circumstances. (2.) Because it purports to bind, and does affect the interest of those who are not parties. (3.) Because it wholly omits to provide for the defendant, Handy, as tenant by the curtesy (4.) Because it does not, unless by implication, determine all the matters in issue, and which ought to have been decided.

Mr. *Wheaton*, for the plaintiff below, in reply, as to the want of proper parties, argued, that, as by the local law, one coparcener could maintain an action at law for his share of the real estate, the same rule of proceeding would be adopted in equity. Under the peculiar circumstances of the case, the Court below had considered the defendant, Caleb W., as legal owner under the administration sale, sufficiently representing all

1826.

*Harding*
*v.*
*Handy.*

*Handy*
*v.*
*Harding.*

a Mandeville v. Welch, 5 *Wheat. Rep.* 282.
b *Ambl. Rep.* 589. 1 *Ves. jr. Rep.* 546.

the parties who could claim any beneficial interest; and he (as in effect a plaintiff) submitted to any decree the Court could make in favour of the plaintiffs. Besides, the nature of the jurisdiction of the Courts of the Union, which was derived from the character of the parties as citizens of different States, would prevent their insisting upon parties who were not absolutely necessary to the determination of the merits of the cause as between the parties before the Court.[c] But, in this case, the Court might apply the analogous rule, as to next of kin suing for distributive shares of personal property, one of whom may sue, and the rest may come in under the decree.[b]

Upon the merits, he insisted, that the question as to the capacity of the grantor was not a question of absolute insanity. All the cases show, that the Court will interfere wherever a peculiar relation has been abused to influence or impose upon a person of weak mind. A commission of lunacy is not, by the modern practice of the Court of Chancery, confined to cases of strict insanity, but is applied to cases of imbecility of mind, *to the extent of incapacity*, from any cause, as disease, age, or habitual intoxication.[c] This principle is fully developed by Lord Erskine in *Ex parte Cranmer.*[d] It was not, therefore, ne-

a  Russell v. Clark, 7 *Cranch's Rep.* 98.
b  Coop. Eq. 39, 40.
c  Ridgway v. Darwin, 8 *Ves. Rep.* 65.
d  12 *Ves. Rep.* 445.

cessary to show that the grantor was absolutely *non compos mentis* in a strict legal sense, still less was it necessary to prove that he was incapable at the precise moment the deeds were executed.

As to the defects in the pleadings, and the other informalities in the proceedings, it was said that the Court would look with an indulgent eye upon the pleadings and practice in equity causes in those States, where, no State Court of Chancery existing, the forms of proceeding were less familiar to practitioners. But, it was insisted, that the bill contained a sufficient allegation of the incapacity of Comfort W. to execute the deeds in question, to put that fact distinctly in issue, and it had been met responsively by the answer of the defendant, Handy, explicitly denying it.

Mr. Chief Justice MARSHALL delivered the opinion of the Court, and, after stating the case, proceeded as follows:

The counsel for Asa Handy contend, that the bill seeks to set up a parol trust, which is denied in the answer, and that the decree is founded on a supposed incompetency of Comfort Wheaton to convey his property. The decree, therefore, is not supported by the allegations of the bill.

They, also, contend, that the decree is not sustained by the proofs in the cause.

That the bill alleges the conveyances of the 9th of May to have been received for the benefit of the family, is unquestionable; but this is not

*1826.*

Harding
v.
Handy.

Handy
v.
Harding.

*March* 1st.

Decree according to the *allegata* as well as *probata.* Fact of the incompetency of Comfort W. sufficiently alleged to put it distinctly in issue.

incompatible with the incompetency of Comfort Wheaton to execute them. Deeds may be obtained from a weak man for the purpose of preserving his estate for himself and family, and of protecting him from the impositions to which he might be exposed; and there is nothing to restrain one of the heirs, who may think himself aggrieved, from bringing the whole case before a Court of equity. If, indeed, it were true in fact, that the bill does not allege this incompetency so as to put it in issue, the objection would be conclusive; for, it is well settled, that the decree must conform to the allegations of the parties. But, we think, this bill is not justly exposed to this objection. It states the general correct conduct of C. W. during the life of his wife; that, soon after her decease, he was visited by a paralytic stroke, which was followed by a total change in his conduct. He was addicted to intoxication, and to many vicious habits, in the course of which, fears were excited in his family that he would waste all his property, or convey it to his profligate companions. They consulted together, and with their friends; and the first proposition was, to apply to the Court for a guardian to manage his affairs, according to the law of Rhode Island in such cases. It was, however, finally agreed, that Asa Handy should obtain deeds for his property, and hold it for the use of C. W. during his life, and of his heirs after his death. The bill then proceeds to state, that the said Asa Handy, knowing the premises, did induce the said Comfort, " he being in the state and condi-

tion of body and mind aforesaid," for the nominal consideration of 2,178 dollars, to make the conveyances in the bill mentioned.

1826.

Harding
v.
Handy.

Handy
v.
Harding.

Although a more direct and positive allegation that C. W. was incapable of transacting business, would have been more satisfactory than the detail of circumstances from which the conclusion is drawn, yet, we think, that the averment of his incompetency is sufficiently explicit to make it a question in the cause. The defendant has met this charge, and we cannot doubt that his answer is sufficiently responsive to the bill, to give him all the benefit which the rules of equity allow to an answer in such circumstances.

We proceed, then, to look into the proofs in the cause, and to inquire whether the testimony establishes the incompetency of C. W. when these deeds were executed.

Proofs of the incompetency of the grantor.

We have examined with attention the immense mass of contradictory evidence which the record contains. A number of persons, and, among others, the witnesses to the deeds, express the opinion that he was capable of managing his affairs, and of disposing of his property. This evidence, however, is met by such a mass of opposing testimony as can scarcely be resisted. Among the numerous witnesses who testify to the imbecility of his mind, are many who had been long and intimate acquaintances. All his physicians concur in stating, in strong and decided terms, the weakness of his mind, as well as

his body, which they ascribe chiefly to the character of his disease. One of them, Doctor Barrows, attended him about the time these deeds were executed. He says, " with regard to the state of his mind, at all times when I saw him within the said period, (from the 1st of March to the 25th of November, 1809,) I can say, that he appeared to me wholly incapacitated to transact any money business, or to have the care of any concerns whatever. It is my opinion, that the decay of his mental faculties was such as to induce that state of fatuity which would unfit him for all the purposes relative to the affairs of life, except obeying the various calls of nature." Some of the witnesses add to their opinion of his imbecility, some circumstances on which the opinion is founded, which cannot fail to make a deep impression on the mind. Ziba Olney says, that he was acquainted with C. W. for the last five years of his life, who, for the last fifteen months of them, resided in his family. " That during the whole of these times he appeared to be childish, and incapable of transacting any business. The reasons of this opinion are, that he would frequently repeat the same questions, and would, several times in the same day, ask what day of the week it was. At short intervals, he would talk rationally, and then would break off from conversation to singing, and from that to crying. That he would frequently go out in the night and day, naked except his shirt. That he would frequently break out in profane language, and, at other times, preach." Several other

witnesses describe the situation and conduct of this afflicted old gentleman, in a manner to add great weight to their opinion, that his faculties were prostrated. Many even of those witnesses who depose to his competency, declare, that the public opinion and language of his neighbourhood was, that his mind was deplorably impaired; and the conduct and declarations of his family, including the defendant, Asa Handy himself, show a settled conviction that C. W. was incapable of managing his affairs.

There is evidence of the consultations in which Handy participated, previous to the deeds of the 9th of May, for putting the old gentleman and his estate under guardianship; and there is, also, evidence of similar consultation respecting the propriety of procuring a conveyance of his property, in order to save it for himself and his family. This may not be admissible as proof of a trust; but it is strong evidence of a conviction, that the person from whom the deed was to be obtained was unfit for the management of his own affairs. Among other testimony to this point, Abner Daggett deposes, that Asa Handy asked him if he had a notion of buying his father Wheaton's lot? The witness answered, that he had had some conversation with Wheaton about it; upon which Handy said, Wheaton was no more capable of selling his estate than a child. The witness was deterred from purchasing, though he wished to acquire the lot, by the fear of subsequent controversy.

The great and sudden revolution in the whole

*Margin:* 1826. Harding v. Handy. Handy v. Harding.

conduct of C. W., immediately after the first paralytic stroke, viewed in connexion with his advanced age, is a strong circumstance in corroboration of the opinion that his mind was diseased. A sober, prudent, reflecting, and moral man, between seventy and eighty years of age, mingles with profligate people, to whom he devotes himself, and becomes suddenly intemperate, immoral, and childishly whimsical and indiscreet, so that his nearest friends think it necessary to put it out of his power to ruin himself.

The terms on which this old gentleman stood with his family, are not entirely unworthy of consideration. But two of his children, Caleb, and Mary, the wife of the defendant Asa, lived near him. From causes, some of which may be discerned in the record, he was on ill terms with Caleb. One of the witnesses deposes, that he said, on one occasion, " You know, Asa, I made you the deeds to spite Caleb." There is other testimony to the same effect. The necessary consequence of this quarrel with Caleb, was, to subject him, in an increased degree, to the influence of Mary Handy and her husband, and exposes the deeds conveying all his property to them, to an increased degree of suspicion.

The inadequacy of the consideration, as stated in the bonds referred to in the answer, furnishes an additional argument against these deeds. It was chiefly the support of C. W. for the residue of his life. This proved to be five years, which was a longer time than his age, and state of health, at the time of the transaction, rendered

probable ; but which was certainly not a full consideration for the property.

These various circumstances add so much weight to the opinions of those who depose to the incompetence of C. W., that the mind cannot withhold its assent from that conclusion.   An issue, indeed, might have been directed ; but we do not think it a case in which this course ought to have been pursued.   The degree of weakness, or of imposition, which ought to induce a Court of Chancery to set aside a conveyance, is proper for the consideration of the Court itself ; and there seems to be no reason for the intervention of a jury, unless the case be one in which the Court would be satisfied with the verdict, however it might be found.   A verdict affirming the capacity of C. W. to execute these deeds on the 9th of May, 1805, could not, we think, have been satisfactory to the Court ; and it was, consequently, not necessary to refer the question of competency to a jury.

If these deeds were obtained by the exercise of undue influence over a man whose mind had ceased to be the safe guide of his actions, it is against conscience, for him who has obtained them to derive any advantage from them.   It is the peculiar province of a Court of conscience, to set them aside.   That a Court of equity will interpose in such a case, is among its best settled principles.   The cases cited in the argument, which we will not repeat, place this beyond the possibility of question.   It was, therefore, proper to set aside the deeds, and to direct the de-

*Margin notes:*

1826.

Harding
v.
Handy.

Handy
v.
Harding.

An issue unnecessary, and if it had been directed,     the verdict would not have been conclusive.

Deeds set aside, on account of the undue influence exercised upon the grantor.

Harding
v.
Handy.

Handy
v.
Harding.

Estate to stand
charged with
advances made
by the grantee.

fendant, Handy, to account for the money he had received under them.

But, although that defendant ought not to be permitted to benefit himself by his own improper act, it is not reasonable that he should be burthened with the debts of C. W., and the expenses of his maintenance. These are proper charges on the estate itself. So are improvements and repairs which enhanced the rents, and the value of the estate. As a defendant in equity, Asa Handy has certainly a right to retain them, and to receive credit for them in the account which was directed by the Circuit Court.

There is, we think, no error in the manner in which the account was directed to be taken.

The parties were heard before the Master, who, after a very laborious and comprehensive examination of their accounts, has made a voluminous report, to which both parties have excepted.

The Court does not investigate the items of an account, nor review the Master's report, except as to such matters as are specified in the exceptions, and the parts of the evidence particularly referred to.

It may be observed, generally, that it is not the province of a Court to investigate items of an account. The report of the master is received as true, when no exception is taken ; and the exceptions are to be regarded so far only as they are supported by the special statements of the Master, or by evidence, which ought to be brought before the Court by a reference to the particular testimony on which the exceptor relies. Were it otherwise, were the Court to look into the immense mass of testimony laid before the Commissioner, the reference to him would be of little

avail. Such testimony, indeed, need not be reported farther than it is relied on to support, explain, or oppose, a particular exception.

1. The first exception made by Handy is, that only the sum of 5,448 dollars 26 cents, were allowed him by the Commissioner, instead of 101,167 dollars, 30 cents, the amount of his claim. This is a general exception, which comprehends, it is supposed, the particular alleged errors enumerated in the subsequent exceptions.

2. The second exception is, that the Master did not admit his whole account on his own oath.

The conduct observed by the Master on this point, is thus specially stated by himself. "I admitted said Asa to make oath to all charges, whether for money, specific articles, or services, which, from the circumstances of the parties, or the nature of the charge itself, could not, in my opinion, be proved by vouchers, or other legal evidence."

This rule, adopted by the Master, is, in our opinion, one to which Handy could make no just objection There can be no propriety in admitting the party as a witness to support items in an account, which, from their character, admit of full proof. Of this description are the items which constitute his third exception. It is the demand of testimony to support his charges for repairs and improvements. These repairs and improvements are susceptible of complete proof; and, as there could be no difficulty in procuring

1826.

Harding
v.
Handy.

Handy
v.
Harding.

Rule of practice on exceptions made to the Master's report.

Testimony of the party, how far admissible in accounting before a Master.

it, the Commissioner did right in requiring it. The fourth exception is to the rejection of his oath to discharge himself from rents, which, as he alleged, he had not received.

The Commissioner has made considerable deductions from the total amount of rent, if calculated for the whole time, but has rejected the oath of Handy, because he admitted that he had kept legers in which his receipts of rents were regularly entered, which were still in his possession, but which he refused to produce. The decision of the Master on this point was so obviously right, that it need only be stated to be approved.

5. The fifth exception is, that the Master has not allowed for repairs and improvements according to the measurement of Nathan Parks, which was on oath, but according to the estimate of John Newman, which was not founded on actual measurement, but made principally by the eye.

The Master reports, that, " in addition to the evidence produced by the parties, I appointed John Newman, an experienced and skilful measurer of carpenters' work, to go on the premises, together with the said Handy and myself, and to measure and estimate all such repairs, and alterations, and buildings, as said Handy, being under oath, should point out as being made and executed by him." The estimate of the said Newman, with his deposition, are referred to, and annexed to the report.

Newman deposes, that his estimate is founded

on actual measurement, except parts of the roof of one building, which he took from the measurement of Nathan Parks, and of another, in which he was guided by the statement made by Handy himself of the length of the rafters, which accorded with his own estimate.

That a measurement thus made and proved, was entitled to more respect than the *ex parte* measurement of Parks, cannot be doubted.

6. An exception is also taken to the report, because it disallows the charge made by Handy of a note, which he says was proved.

This exception, it is presumed, was not taken before the Master, as he does not notice it, and it is too vague to be regarded. Neither the note, nor the ground on which payment is claimed, nor its amount, nor the reasons of its rejection, are stated; nor is there any reference to the evidence in support of it. Nothing is stated to induce a suspicion, that the disallowance of it was improper. Yet the Court, from its solicitude to discover whatever the record might contain on this subject, has looked through the report. Nothing is said, so far as we can perceive, respecting a note, except in the affidavit of Ziba Olney, who states, that Asa Handy became the endorser of some note for Appleby, which was settled in some way in the board of C. W., on which note, he believes, Handy was sued. If this is the note to which the exception alludes, the claim is absorbed in the allowance made him for the board of C. W. But, whether it be the note or not,

the exception is totally unsupported, and cannot be sustained.

7. A seventh exception is, a charge of money alleged to have been received of Doctor Bowen, although he discharged himself therefrom on oath, in payments of different sums under twenty dollars each.

This is the application to a particular item of the principle contained in the second exception, and is disposed of with that exception.

8, 9. The eighth exception is a repetition of the objection to the manner in which Handy is charged with repairs, the Master's report respecting which has been already stated to be satisfactory ; and the ninth is a repetition of the claim to sustain his accounts on his own oath.

10. The tenth exception is to the requisition made on him to produce his leger, in which entries had been made of the rents he had received.; a requisition to which he objects, because it contained transactions anterior to the entries of rent.

The validity of this objection cannot be admitted. The leger might be inspected in the presence of the defendant, Handy, and there could be no propriety in commencing the examination with prior transactions.

11. The eleventh exception respects the calculation of interest. The Commissioner had made what are denominated rests in the account, instead of calculating interest on each minute item. This mode of calculating receipts and expenditures, in accounts consisting of numerous

small items, is recommended by convenience, and has been generally adopted. It seems to have been properly adopted in this case.

12. The twelfth and last exception, is a repetition of the often repeated, and as often rejected claim, to be admitted to swear to his whole account.

The original plaintiffs except (1.) to the allowance made to the said Asa Handy for buildings which were erected on the lot after the death of C. W., which are said to be no advantage to it.

But there is no proof, and no reason to believe, that these buildings were not a real advantage to the property, and did not increase the rent and the value. This exception, therefore. was properly overruled.

2. The second exception is to the admission of the said Handy's oath, in cases in which he refused to produce his books, and the books of C. W.

No example of this admission is given, nor is there any proof in support of the exception. The rule by which the Master was governed has been already stated and approved.

3. The third exception is a repetition of the objection to the admission of items in the account of Handy, on his own oath; and is answered by a reference to that part of the report which relates to this subject, and which has been already stated.

The fourth, fifth, sixth, and seventh exceptions, are totally unsupported by evidence, and, consequently, cannot be sustained.

1826.

Harding
v.
Handy.

Handy
v.
Harding.

We think the Circuit Court did right in confirming the report of the Commissioner.

Upon the return of this report, the Circuit Court directed the estates to be sold, and the money due to the said Asa Handy to be paid, in the first instance, and that one fifth of the residue should be paid to each of the plaintiffs, that being the distributive share of each under the law of Rhode Island. The decree proceeds to authorize the heirs who were not made parties to come in and receive their distributive shares, on paying their proportion of the costs and charges of suit.

The objection to this decree is, that the children of Mary Handy, and the children of Daniel Wheaton, are not parties to the suit.

All the heirs to be made parties, if within the jurisdiction of the Court.

It has been supposed, that it is not necessary, in Rhode Island, to make all the heirs parties, because, by the laws of that State, parceners can sue separately for their respective portions of the estate of their ancestor. This law would, undoubtedly, be regarded, in a suit brought on the common law side of the Circuit Court. Its influence on a suit in equity is not so certain. But, however this may be, we are satisfied that a sale ought not to have been ordered, unless all the heirs had been before the Court as plaintiffs or defendants. Although the legal estate may be in Caleb Wheaton under the deed made by the administrator, yet he acknowledges himself to be a trustee for the heirs, having purchased for their benefit. They have, therefore, a vested equitable interest in the property, of which they

ought not to be deprived without being heard. They may choose to come to a partition, and to redeem their shares by paying their proportion of the money with which the estate is charged. The bill does not state, that the heirs who are not made parties are unwilling to become so, or cannot be made defendants by the service of process. We think, then, that there is error in proceeding to decree a sale, without bringing all those heirs before the Court who can be brought before it ; and for this error, the decree must be reversed, and the cause sent back, with liberty to the plaintiffs to amend their bill by making proper parties. If all the heirs cannot be brought before the Court, the undivided interest of those who do appear, is to be sold, and the lien of Asa Handy is to remain on the part or parts unsold, to secure the payment of so much of the money due to him as those parts may be justly chargeable with.

DECREE. These causes came on to be heard, &c. on consideration whereof, this Court is of opinion, that there is no error in the interlocutory decree, nor in so much of the final decree as approves and confirms the report made by the Master ; but there is error in so much thereof as directs a sale of the premises therein mentioned, all the heirs who are shown to be interested in the said premises not being made parties, and it not being shown or alleged that they could not be made parties. So much of the decree, therefore, as directed a sale of the premises in the

1826.

Harding
v.
Handy.

Handy
v.
Harding.

**1826.** bill mentioned, is REVERSED and ANNULLED, and
the residue thereof is AFFIRMED ; and the cause
is remanded to the said Circuit Court, with liber-
ty to the plaintiffs to . make all proper parties,
that the whole may be sold if all the heirs can- be
made parties, otherwise the shares of such as are
made parties.    Each party to pay his own costs
in this Court.