## W. H. Martin *v.* E. A. Broadus *et al.*

Where slaves were brought into this state as merchandise, and sold in violation of the constitution on that subject—held, that the contract of sale was void, but that the title to the slaves remained in the vendor.

A court of equity will relieve a party from an illegal contract, but will impose such terms as a condition to such relief as will meet the ends of justice and place both parties on equal grounds.

A party cannot set aside an illegal contract, and at the same time retain possession of the property acquired by such contract.

In order to sustain a bill to annul a contract for slaves sold in violation of the constitution, the complainant must offer to deliver the slaves to the vendors.

Where the right to the possession of property is made a matter of judicial controversy, a court of equity will not award possession to the complainant by injunction upon the unsupported showing of the bill.

The facts of this case are sufficiently set forth in the opinion of the chancellor. The defendants moved to dissolve the injunction for want of equity on the face of the bill.

HUGHES for the motion.

The complainant alleges that defendant, Broadus, introduced slaves into this state in violation of the new constitution; sold them to complainant, and, to secure the payment of the purchase money, complainant executed and delivered a deed of trust on land and slaves. The money is due and unpaid, and defendant is about selling under the deed of trust. There is no offer to do equity by returning the negroes and paying for their hire. For the defendant, we insist that the injunction should be dissolved, because the complainant does not offer to do equity. See 1 Story's Equity, 300.

The cases referred to in Story are cases, where, by the English law, the agreement is void for usury upon a loan of money. In such case, when the borrower comes into a court of equity, the court never permits the party to run off with the money, but will give relief upon the terms that he pay the money lent, with legal interest; and, unless he offers to do this, his bill is demurrable. What is the difference between this class of cases and the case under consideration? The complainant comes into a court of equity, and says, it is true I am *particeps criminis*—but for me the law would not have been violated; yet he says he ought to be permitted to hold on to the slaves which he has obtained by virtue of a void sale, and at the same time hold the money too—the price of the negroes. To carry out the rule "that a party, when asking equity, must do equity," the court, before granting an injunction, should require that the slaves sold be offered to be given up.

The injunction should, if not dissolved, be modified. The writ commands and enjoins the defendant in the bill from proceeding with the sale under the deed of trust, *and also that the property be delivered to the complainant.*

There is no authority for an injunction commanding a thing of this kind to be done. An injunction can command the parties to *refrain,* but not to be *active.* We mean the remedial injunction—that which issues upon bill before decree.

There are two kinds of injunctions: one, the remedial, by which, upon bill before decree, a party is commanded to hold his hands; the other, the execution injunction, which issues after decree, by

which a thing may be directed to be done—such as deliver possession of land, and the like. See Eden on Inj. p. 1.

The writ which issued on this case was of the latter kind, although issued as a remedial writ, upon bill filed before decree. In this respect the writ is irregular, and should be modified, and so far discharged.

WILLIAM YERGER contra.

The defendant contends that this injunction should be dissolved, because there is not a tender of the slaves bought and their hire; and he likens it to usury cases. There is a manifest distinction between this and the usury cases. The laws against usury are made for the protection of the *borrower.* If, when he came into equity, he got relief upon conditions of paying the sum actually borrowed, and legal interest, he got all the protection he was entitled to ask. But, in the case before us, the contract is not declared void out of favor to the purchaser. It is to protect the public that it is so done; and, when a thing is absolutely void by reason of public policy, I know of no principle of law which authorises a chancellor to refuse to declare it so, unless the party will comply with conditions, which the chancellor may see fit to impose. If the contract is void, a court of equity has no discretion upon the subject. It is bound so to declare it, and it has no right to impose any condition upon the subject. The doctrine, even in usury cases, is questionable, and can only be tolerated because it has the sanction of age to sustain it. In 1 Rand. 172, the court propose a query: whether, in usury cases, a party is not entitled to relief *in toto,* if he can prove the usury without a discovery. And this we take to be the true rule upon the subject.

As to the question of modifying the injunction, there is nothing in it. The powers of a court of equity are fully adequate to give the relief asked for. The trustee has no interest in, or right to, the thing. He stands where the sheriff does after a levy of an execution; and the right of a court of equity to command him to deliver up property levied on by him, has never been questioned on a proper cause shown.

The CHANCELLOR.

The substance of the complainant's bill is that he purchased from the defendant, Broadus, a number of negro slaves, which were introduced by him into this state for sale, as an article of merchandise, since the first of May, 1833, in violation of the constitution upon that subject—that his contract of purchase is therefore void; that for the purpose of securing the payment of the purchase money for the negroes so purchased, he made a deed of trust, conveying to the defendants, Rives and Davenport, a large body of land and a number of slaves; that the trustees are about to sell under that deed, to prevent which an injunction was prayed and granted by a circuit court judge restraining the sale and *ordering the trustees to deliver over the slaves into the complainant's possession.* The bill further prays that the deed of trust may be declared void, and be decreed to be delivered up and cancelled. A motion is made to dissolve this injunction upon the face of the bill upon two grounds: 1st. That the complainant does not offer to surrender back the slaves to the owner, the contract for which he seeks to avoid. 2d. That the injunction is irregular in ordering a change of the possession of the slaves from the trustees to the complainant.

I have heretofore intimated an opinion upon the first ground taken in this motion, and subsequent reflection and research have not furnished me with any reason for changing the views which I then expressed. If the contract in such a case is void, (and the Supreme Court have so declared,) it would seem to follow, as a clear consequence, that the title to the negroes at least remained in the seller. The contract for the sale of the negroes being void, the case would stand, so far as any rights were acquired or parted with under it, as though the contract had never been made. I do not understand the Supreme Court to have decided that the act of illegally introducing negro slaves into this state worked a forfeiture of the owner's title to the negroes themselves. It is sufficient that neither the constitution nor the laws of the state either expressly, or by implication, sanction such an idea. The naked question, then, which is presented, is this: Will a court of equity relieve a party from his illegal contract, and at the same time leave him in the full enjoyment of all the fruits which he gathered through

that source? or will it impose such terms as a condition to any relief as shall meet the end of justice and place both parties upon equal ground? To absolve the complainant from the obligation of his contract, and permit him at the same time to retain the possession of the negroes acquired under it, would seem to be subversive of the plainest principles of natural justice. I entertain no doubt that when a court of equity is invoked in such a case, it is competent to impose, as a condition to its interference, such terms as shall do full and complete justice between the parties.

A learned elementary writer, in treating of the jurisdiction exercised by courts of equity in decreeing void deeds to be delivered up, remarks: "In many cases where the instrument is declared void by positive law, and also where it is held void or voidable upon other principles, courts of equity will impose terms upon the party, if the circumstances of the case require it." 2. Story Com. Eq. 7.

I conceive the rule thus broadly laid down is fully sustained by adjudged cases. In a case before the Supreme Court of the United States, (11 Wheaton, 103,) where a bill had been filed in the circuit court by the complainants, for the purpose of setting aside a conveyance of property made by the father of the complainants to the defendants, upon the ground of fraud, the father being nearly insane from the effects of disease and intemperance, and when the defendant had, whilst in possession of the property, expended money in its improvement and in support of the complainant's father, in affirming the decree of the court below, setting aside the deed and restoring the property, chief justice Marshall held, that although the defendant ought not to be permitted to benefit himself by his own improper conduct, it was not reasonable that he should be burdened with the expenses of maintaining the father; that, he said, was a proper charge upon the estate itself, as were the improvements which enhanced the value of the estate; adding, that *as a defendant* in equity he had certainly a right to retain them. This case fully sustains, as I conceive, the rule laid down by judge Story. Other authorities equally support it. Lord Thurlow, in the case of Veville *v.* Wilkinson, (1st Bro. Ch. R. 547, 8,) says, that if courts of justice mean to prevent the perpetration of crimes, it must not be by allowing a man who has got possession

to remain in possession, but by putting the parties back to the state in which they were before.

It occurs to me, that the adoption of the opposite rule would justly subject the law to the reproach of affecting to reprobate crime on the one hand, whilst it tolerated and encouraged fraud on the other. If a court of equity is appealed to, to protect a party against the consequences of an illegal contract, its aid should not be lent to the extent of consummating a fraud on the opposite party.

A person coming into a court of equity to impeach a judgment at law, must on his part do what equity requires. 1st Hen. and M. 433. Courts of equity never interfere to deprive the plaintiff at law of a legal advantage he may have gained, unless the party seeking relief will do complete justice; and this principle was carried to the extent of refusing relief against a judgment obtained by fraud, until the plaintiff should do complete justice in the case on his part. 1st Wash. Rep. 196. So a borrower of money, who seeks to avoid a recovery on the ground of usury, must do what justice requires at his hands, by offering to pay the amount due, less the usury. 1st John. Ch. 307.

In the case of setting aside and delivering up of annuity securities, because not duly registered, courts of equity will direct an account of receipts and payments on each side, and a payment of the balance by the proper party. 19 Ves. 130. So also in regard to infants, who are protected against their contracts; yet they will not be permitted to turn the protection which the law gives them on account of their supposed weakness into an engine of fraud upon the rights of others. An infant giving his promissory note for a negro, may avoid the note, but would be liable in an action of trover or detinue for the negro; because to detain him would be a fraud upon the person with whom he dealt.

But I proceed to notice the second ground upon which the motion to dissolve is made. The injunction granted in this cause not only restrains the defendants from making sale of the property mentioned in the deed of trust, but requires them to deliver it unconditionally into the possession of the complainant. Injunctions of this description are frequently ordered as a process for enforcing final decrees; but I am not aware of any principle or

W. H. Martin *v.* E. A. Broadus, *et al.*

rule of practice which authorizes such an injunction based upon the interested showing of one party, and upon the mere *ex parte* presentation of the bill. When the right to the possession of property is made a matter of judicial controversy, to award possession to the complainant by injunction in the first instance, upon the unsupported showing of the bill, would be to decide the main question without allowing the defendant to be heard. Such a practice is wholly inadmissible. The case of Deklin *v.* Davis (Hopkin's Rep.) is an authority against it. I think, upon either ground of the motion, the injunction should be dissolved.