SUÁREZ ET AL. *v.* EL BANCO TERRITORIAL Y AGRÍCOLA.

APPEAL from the District ·Court of San Juan, Section 1.

No. 459.—Decided June 21, 1910.

CONTRADICTORY EVIDENCE—FINDINGS THEREON BY THE TRIAL COURT.—It is a principle well settled by the jurisprudence of this court that, where the evidence is contradictory, the findings of the trial court thereon will not be disturbed on appeal, unless it is shown that the trial court was influenced by passion, prejudice or partiality, or that a manifest injustice has been committed.

SALE OF REAL PROPERTY—PRICE MENTIONED IN THE DEED.—Where a statement is made in a deed that the price of the sale therein mentioned was paid, the presumption of the truth of such a statement is thereby established subject, of course, to proof to the contrary.

ID.—MENTAL CAPACITY—ABSENCE OF CONCLUSIVE PROOF.—A deed will not be annulled on the ground of mental incapacity of the party executing the same where the witnesses do not agree in regard to the insanity of the executing party at the time the contract was made, alleged acts of insanity being explained by the eccentricities of the party and the fact that he is an alcoholic, and especially where several notaries testify as to his lucid mental condition, and the appellants themselves claim under the will made by such person at the time the deed was executed.

ID.—FRAUD—INADEQUATE PRICE.—This sale having been attacked and alleged to be null and void by reason of fraud and a grossly inadequate price, the estimate being arrived at by taking the present value and attempting to work back 10 years, and thereby determine what its value might have been, the court held that such a basis was too remote· and speculative.

ID.—EVIDENCE NECESSARY TO ESTABLISH FRAUD.—In order to establish the existence of fraud in a contract of purchase and sale, it must be clearly and conclusively proved.

FRAUD—DECEIT—MENTAL WEAKNESS OF VENDOR.—The mere fact that the vendor was a person of weak mental capacity is not sufficient in itself to warrant the annulment of a deed of sale executed by him, unless it is shown that he was influenced by some other person.

ID.—Notary Disqualified.—A deed of sale of real property executed in favor of a bank before a notary who is a stockholder in the bank, is not null and void on that account.

Admission of Evidence—Cases Tried by Court of Law.—In cases tried by a court of law the presumption is that impertinent and cumulative evidence admitted has no influence upon the judgment rendered, it being presumed that the court will disregard it in rendering judgment in the case.

The facts are stated in the opinion.

Messrs. *Henry F. Hord* and *Joseph Anderson* for appellant.

Mr. *Juan de Guzmán Benítez* for respondent.

Mr. Justice Wolf delivered the opinion of the court.

This is an appeal from the First Section of the District Court of San Juan.

The suit was begun by the widow and heirs of José Rodríguez Fuentes to cancel and declare void the deed of sale to the defendant and appellee of a certain piece of property located on Tetuán Street, which is the building where the defendant and the American Colonial Bank are now located; and also to recover the rents and profits of the building alleged to amount to about $87,000. This sale took place on November 20, 1895. José Manuel Rodríguez Fuentes died on April 29, 1896.

The complaint sets up that for more than two years before his death, and at the time preceding and including the date of the sale, José Rodríguez Fuentes was insane to such a degree that he was rendered incapable of transacting business or managing his affairs, and that his incapacity reached such a stage that his wife was compelled to resort to the courts to ask that a conservator be named to manage his affairs, the said Rodríguez Fuentes having squandered much of his property, and that there was danger that she and her children would be left destitute if the dissipation continued; that the property was worth 100,000 *pesos* at the time of the sale; that the members of the defendant bank, although they knew the mental condition of Rodríguez Fuentes, conspired to pay him a grossly inadequate price for the property, and that,

in fact, the price recited in the deed, namely, 35,000 *pesos,* was only one-third of the then actual value; that the complainants were also informed and believe that the said sum of 35,000 *pesos* was not paid to Rodríguez Fuentes, but a much less sum; and that the defendant was not entitled to the value of any of the improvements made by it because it held the property in bad faith; that the complainants offered to.return the original purchase price; that the said Rodríguez Fuentes died impoverished due to the acts of the defendant; and that the defendant, though often requested, had never turned over the property to the complainant and still holds the same.

The defendant answered denying in substance all the facts tending to show insanity on the part of Rodríguez Fuentes, his incapacity at the time of the sale, or any fraudulent acts or conduct on its part or on the part of any of its members. It also denied that any less sum was paid to Rodríguez Fuentes than the amount recited in the deed, and many other things. The answer also set up that the complainants had knowledge of the sale at the time it was made and ratified the same after the death of Rodríguez Fuentes.

The case was tried in January, 1909, and the court found in favor of the defendant at the trial on the question of insanity. There was considerable conflict in the evidence and there is nothing in the record which would entitle the appellants to fall within the exception of the principle so frequently announced by us, namely, that where the evidence is conflicting this court will not reverse unless it appears that the court below was swayed by passion, partiality or prejudice, or some manifest injustice has been done.

Indeed we do not see from the evidence that the court could have reached a different conclusion. The acts of Rodríguez Fuentes showed him to have been an exceedingly eccentric man, but the proof in the main was consistent as to his ability to look after his own affairs and his capacity and intelligence in the handling of money.matters, and we shall go so far as to say that the preponderance. of the evidence

did not show his insanity and, more especially, did not demonstrate that he was insane at or about the time he made the deed. Some of the doctors, for example, testified that some of the absurd and eccentric actions of Rodríguez Fuentes relied on by appellants, such as buying watches and smashing them with a hammer, lighting fires in the night, going out in public without his clothes, doing other obscene acts, riding a bicycle with his shirt outside his pants and streaming behind him, and his disregard of his person, might have been due to alcoholism. The testimony shows that he drank freely.

There is evidence that the wife of Rodríguez Fuentes began a proceeding in 1896 to have him declared insane, and during the pendency of that proceeding there were some experts who testified that he was incapable of managing his own affairs or of taking care of his person; but, on the other hand, there were several reliable experts who arrived at the opposite conclusion or at least certified that there was nothing to show that he was insane. Rodríguez Fuentes was never declared insane. There was a large number of respectable citizens, namely, Marcos Purón, Pedro Zamorano, Wenceslao Bosch, Pedro García Cogoller, Guillermo Korber, and others who testified that they had known Rodríguez Fuentes and that he was an exceedingly intelligent and accurate man; some of the complainants, witnesses who testified as to his insanity, ascribed it to drink; others said he had lucid intervals. It was shown that when Rodríguez Fuentes was in jail that he always had a bottle of brandy at his side; that he was released on account of his mental condition and that then, according to the testimony of at least one of complainants' witnesses, the more violent symptoms ceased.

The testimony of almost every witness was consistent with sanity or at least that he might have been sane at the time he made any particular deed.

Furthermore, in addition to the deed to the bank in November, 1895, on December 11, 1895, he made a deed of sale to Marcos Purón, and the notary, Mauricio Guerra, testified as

to his capacity.  Another public document was made by the same parties before the same notary on December 27, 1895, in which the notary makes a similar certificate.  His will was made on April 25, 1896, before the notary, Tomás Valdejuli, who testified as to defendant's capacity to make a will; moreover, the same plaintiffs presented the will for probate and divided the property in accordance with its terms.

Taking all the evidence together we see no reason to question the correctness of the court's conclusion as to the sanity of Rodríguez Fuentes at the time he made the deed to the bank.

The allegation that Rodríguez Fuentes died impoverished seems to be disproved by evidence showing that, according to the inventory made by his heirs, he left 60,709.25 *pesos,* including 19,500 *pesos,* on deposit in the Territorial Bank.  This deposit was part of the purchase price for the property in litigation and was left with the bank as security against a possible attachment on the property of Rodríguez Fuentes, because it was feared that in proceedings against him for embezzlement a recovery might be had.

The recital in the deed that the 35,000 *pesos* was paid to Rodríguez Fuentes raises a presumption of the truth thereof.  There was no satisfactory proof to combat this statement beyond the testimony of the wife who, it is true, said that she did not know that the property was sold and that her husband had always said "My girl, they have put me out of my building."

The appellants also allege that the price paid was inadequate and should have been at least 100,000 *pesos,* but this estimate is arrived at by taking the present value and attempting to work back 10 years and thereby determine what its value might have been.  This is too remote and speculative.  We have no data what the value of property in San Juan was at the time, and we are confident enough of the beneficial effects of the relations of Porto Rico with the United States not to find extraordinary the increase in value

of a piece of property on one of the busiest corners in San Juan, and this would be so without considering the improvements made by the bank.

There are various charges and intimations of fraud made against the defendant. The principal one is that they took advantage of the mental condition of Rodríguez Fuentes to pay him a grossly inadequate price for his property. Even if it were established that, owing to drink or disease, Rodríguez, although not insane, was mentally weak and easily influenced, it would still have to be shown that such condition was known to the defendant bank and that it took advantage of the same. It has not been shown, as we have said before, that the price paid was inadequate, and until this is demonstrated a charge of fraud lacks its most essential element. We have announced in a number of cases the amount of proof necessary in cases of fraud; it must be clear and convincing. (*Carrero* v. *Calzada; Ventura Lama* v. *Manuel Roig; Moral & Co.* v. *Antonio Díaz et al.,* decided, respectively, June 2, 1909; June 24, 1909; and May 10, 1910.)

The case of *Harding et al.* v. *Wheaton,* 11 Wheat., 103, and the jurisprudence cited in the same connection are dependent mainly on the principle of undue influence, the mere fact, as we have said, that a man is weak minded would not justify the setting aside of his deed unless it was shown that some other will was substituted for his own. The evidence, however, does not demonstrate that Rodríguez Fuentes was in the weak condition of mind that would justify the interference of a court with the acts he chose to do.

Another particular charge is that the notary who executed the deed was a stockholder of the bank and, therefore, incapacitated under the Notarial Law which disqualifies a notary who is to receive a benefit from the transaction. Here, however, the mere fact of a notary being a stockholder does not make him a person receiving a benefit under a deed, because a notary is not a bank and it is not shown that the transfer was a benefit to the latter.

A number of exceptions were taken by the appellants. They relate to the form of hypothetical questions and to questions which were supposed to be leading, to questions and answers involving hearsay evidence, and, also, the fact that certain witnesses who were not experts gave their opinions as to the sanity or insanity of Rodríguez Fuentes. The case was tried before the judge, the evidence was largely cumulative, and the admission of these questions and answers, if erorneous, was harmless error and not insisted upon by the appellants in this court; moreover, the presumption is, as announced in the case of *Belber* v. *Valvo* (16 P. R. Rep., 342), decided May 19, 1910, that the court, under the circumstances of this case, was not affected in its judgment by the admission of some trifling, irrelevant or incompetent evidence, but that when it came to form its judgment it disregarded the same. We find no error in the judgment and the same must be affirmed.

*Affirmed.*

Chief Justice Hernández and Justice MacLeary concurred.

Justices Figueras and del Toro did not take part in the decision of this case.