## McCord *vs.* Noyes.

*In the matter of the Estate of* CHARLES NOYES, *deceased.*

THE policy of our law in relation to Life Insurance, is in favor of allowing the wife, either in her own name or through the medium of a trustee, to insure her husband's life free from the claims of his representatives or his creditors. An intestate having before his decease effected an insurance on his life for $4000, subsequently surrendered the policy, and took out two new policies for $2000 each, one of which he assigned in consideration of three hundred dollars, the assignee agreeing to pay the future premiums, and on the assignor's decease to pay his widow fifteen hundred dollars, and the other of which he assigned for the benefit of his wife, the assignee obligating himself to pay the premiums. The policies were of little, if any, pecuniary value at the time of the assignment, so far as related to the premiums that had been paid. The company with whom the insurance was effected were empowered by their charter to insure the life of a husband for the benefit of

his wife,—*Held*, that the title being transferred, the legal representatives of the assignor could not recover on the policies. If the transaction is sought to be impeached as being fraudulent and void in respect to creditors, it seems to be unnecessary to compel the administratrix of the assignor to give security for the amount of the policies, until the rights of the creditors have been determined by a court of competent jurisdiction—the administratrix claiming in her own individual right, under a legal title outstanding at the intestate's death.

RICHARD BUSTEED, *for petitioner.*

N. J. WATERBURY, *for administratrix.*

THE SURROGATE.—This is an application on the part of a creditor of the intestate to compel the administratrix to give additional security on the ground that the penalty of the bond taken on the grant of administration, is inadequate in amount. (*Laws*, 1837, *ch.* 460, § 35). Whether such an order should be made, depends entirely upon questions growing out of the assignments of two policies of insurance for $2000 each on the life of the intestate. A policy for $4000 was first taken out in April, 1850. Six months after, it was surrendered, and in its place two for $2000 were substituted. The consideration stated was the payment of $4,22, and the annual premium of $19,20. These policies were issued to the intestate in his own name, October 11, 1850, and on the 30th October, 1850, he assigned one of them to Milton St. John, in consideration of the sum of three hundred dollars, the assignee agreeing to pay the future premiums, and on the assignor's decease, to pay his widow fifteen hundred dollars. The other policy was assigned to the same party on the 14th day of February, 1851, for the benefit of the assignor's wife, the assignee obligating himself to pay the premiums. The policies were of little, if any, pecuniary value at the time of the assignments, if we regard merely the premiums that had been paid; but it is urged that the state of the intestate's health rendered his early decease probable, and therefore the assignments were fraudulent and void as against creditors.

Under the provisions of the English Bankrupt Act, life

policies are held to vest in the assignee, as chattels in the order and disposition of the assured, and an assignment without notice to the company, is void as against the assignee in bankruptcy. (*Angell on Life Insurance*, § 336). The policy of our law, however, is in favor of allowing the wife, either in her own name or through the medium of a trustee, to insure her husband's life free from the claims of his representatives or of his creditors. (*Laws of* 1840, *ch.* 80). The company with which the policies in question were effected, have power by the charter granted by the Legislature of Connecticut to insure the life of the husband for the benefit of the wife. The intestate, instead of effecting insurance directly in the name of his wife, which would have been lawful, has accomplished the same result substantially by assigning the policies to an assignee in trust for his wife, the assignee agreeing to pay the premiums, and so removing all ground for complaint that the husband had contributed the fund for sustaining the policies. The company was notified of the assignment; and by the assignment and delivery there was an entire transfer of the title, so that the husband no longer had control over the policies, and consequently his administratrix cannot establish any claim. (*Harrison* vs. *Mc-Conkey*, 1 *Johns.*, *Ch. R.*, *Maryland*, *p.* 34). The title of the assignee and of the wife is undoubtedly good and valid against the intestate's representatives.

 . Whether creditors, who did not intervene before the transfer of title was perfected, can impeach the assignment of a contract which rested merely in contingency, and which was of such a character as the law sanctions by its policy in view of the relation of husband and wife and the rights of creditors, is a question I do not think necessary for me to pass upon. The assignments being valid, so far as the intestate and his representatives are concerned, and if fraudulent as to creditors, only invalid to the extent of their claims, they have their remedy in equity, if any wrong has been done, against the assignee and the *cestui que trust*. The latter both claim adversely as against the estate of the intestate.

To compel the administratrix to give security for what she claims in her own individual right, and under a legal title outstanding at the intestate's decease, seems to me alike burdensome and unnecessary. If a court of competent jurisdiction shall adjudge the assignments void as respects creditors, the case will present a new appearance. For me to interfere now would, in my judgment, be quite premature. The application must, therefore, be denied, each party paying his own costs.