MARGARET M. MAY, E. M. MAY AND SAMUEL PASCO, AS EXECUTRIX AND EXECUTORS, &C., OF ASA MAY, APPELLANTS, VS. EVA LEE MAY, APPELLEE.

1. A suit against the representatives of a deceased guardian and his sureties upon the guardian's bond, for the settlement of the guardian's account and to establish their liability, and for a decree against them for the amount from the guardian to his ward, is within the jurisdiction of the court of equity.

2. In a suit against the guardian and his sureties to recover the fund in his hands, consisting of the proceeds of a policy of insurance on the life of the guardian's wife, in favor of her daughter, the premiums on which policy had been paid by her father who was insolvent, a plea that the payment of the premiums by the insolvent was fraudulent as to his creditors, and that the proceeds of the policy belonged in equity to his creditors, (one of the sureties being a creditor) does not constitute a defence to the action. These defendants are not in the position of creditors demanding the fund.

3. The principal and sureties of a bond of a guardian are estopped by the recital therein.

4. Payment of premiums on a life insurance policy, by one who is insolvent, is not a fraudulent investment as to subsequent creditors.

5. The investment of the money of a ward, by a guardian, in·a mortgage which he has had assigned to her, without the consent or approval of the court, cannot be charged against her in a settlement of his account with her.

6. Where the items of an account are few and not complicated, a reference to a master to state an account, or the statement of an account by the Chancellor before or at the rendering of the decree, is not essential, there being no confusion or uncertainty in arriving at the basis of the decree or the rules controlling his action.

7. Papers purporting to be accounts rendered by a guardian to the County Judge, found in his office, and duly recorded by the Judge in the records, the accounts being in the handwriting of the guardian, and an order made and entered by the Judge referring to and approving the accounts, though there are no marks on the original accounts showing a filing by the Judge, constitute evidence of the rendering of such accounts by the guardian ; and the adjudication and allowance of such accounts are *prima facie* evidence against the guardian and the sureties upon his bond.

8. Where the sureties in a guardian's bond show a disposition to resist and defeat a recovery of an amount easily ascertained, and interpose improper defences, thereby largely increasing the costs of litigation, they should be charged with the costs of suit.

9. While in rendering a decree against a principal and sureties for the payment of money found due upon an obligation, the decree

should be so framed as to direct its enforcement against the sureties only in the event that the money cannot be made out of the principal, yet where it is clearly established that the principal was utterly insolvent, and he having died, there are no assets in the hands of his representative, it is not error if the decree omit such direction.

10. In a case of this character, a decree for the payment of money substantially in the form of a judgment at law is appropriate.

Appeal from the Circuit Court for Jefferson county.

Asa May and Geo. W. Taylor executed the guardian's bond as sureties. Alvin May, the principal and guardian, and Asa May died defore the commencement of this suit, which is instituted by Eva Lee May, an infant, by her next friend, William Bellinger, against the appellants as executrix and executors of Asa May, and James M. Kilpatrick as executor of Alvin May and against George W. Taylor.

It was contended in argument that the note and mortgage (on land) referred to in the fifth paragraph of the opinion, and claimed to have been purchased as an investment by Alvin May of the infant's money, were an investment made under the approval of the Probate or County Court. Prior to the filing of the bill in the case at bar a suit had been commenced in chancery in the name of the infant by a guardian *ad litem* to foreclose said mortgage. The *guardian ad litem* had been appointed such and for such purpose by the County Court by an order made September 26, 1876, on the petition of the guardian, Alvin May. The order of the County Court is as follows :

*County Court of Jefferson County.*

Estate of Eva Lee May, an Infant.—Petition of Alvin May, Guardian, for Appointment of Guardian *ad litem*, &c.

This cause came on this day to be heard upon the petition of Alvin May for the appointment of a guardian *ad*

*litem* to bring suit upon a note and mortgage belonging to his ward, Eva Lee May, made and executed by himself and for other purposes set forth in the petition. And it appearing that the interests of the said infant can be best promoted by bringing suit upon the said note and mortgage, and William Bellinger being a suitable person to bring such suit and represent the said infant herein, it is ordered that William Bellinger be and he is hereby appointed guardian *ad litem* for the said infant, with full power and authority under the direction of the court to bring suit upon the said note and mortgage, and manage and conduct the same to its conclusion

Done, ordered and adjudged in open court this 26th day of September, A. D. 1876.

JAMES BELL, County Judge.

It was contended that this order amounted to an investment under the direction and approval of the court as required by the statutes.

The decree appealed from is as follows:

This cause having been called up on Friday, the 17th day of December, A. D. 1880, in open court at Monticello, Florida, in the county of Jefferson, and the same having been set for hearing by consent of counsel for complainants and defendants, at Tallahassee, Florida, on Wednesday, the 22d day of December, A. D. 1880, and the same coming on to be heard at Tallahassee on the day last aforesaid, pursuant to such arrangement, and having been argued by P. W. White, George P. Raney and T. L. Clarke, of counsel for complainants, and by John A. Henderson, of counsel for defendants, the executrix and executors of Asa May, deceased, and the court having considered the pleadings and evidence of file in said cause, and being advised of its opinion in the premises, doth order, adjudge and decree that the complainant, Eva Lee May, do recover of the de-

fendant, James M. Kilpatrick as executor of the last will and testament of Alvin May, deceased, and of Margaret M. May as executrix and Elliot M. May and Samuel Pasco as executors of the last will and testament of Asa May, deceased, and of the defendant, George W. Taylor, the sum of seven thousand eight hundred and ninety-one dollars and twenty cents ($7,891.20), the sum ascertained by the court to be due to the complainant.

And it is further ordered, adjudged and decreed that the defendants, James M. Kilpatrick as executor as aforesaid and Margaret M. May as executrix, and Elliot M. May and Samuel Pasco as executors aforesaid, and the defendant, George W. Taylor, do pay the said sum of money, with interest thereon from the date of this decree, into the registry of this court, (taking therefor the receipts of the Clerk of the Circuit Court of Jefferson county, Florida,) on or before the third (3d) day of January next, and said Clerk is hereby ordered to receive and hold the same subject to the order of the court in this cause.

And it is further ordered and decreed that in default of payment being made on or before said third (3d) day of January aforesaid, that a writ of *fieri facias* or execution do issue in the form used in the Circuit Courts in suits at common law out of the Clerk's office for the said sum of money and interest as aforesaid and the costs of these proceedings in favor of the complainant and against the defendants as aforesaid, the same to be levied of the goods and chattels, lands and tenements, which were of the said Alvin May at the time of his death, and which have come to the hands of his said executor to be administered, and of the goods and chattels, lands and tenements which were of the said Asa May at the time of his death, and which have come to the hands of his executrix and executors aforesaid to be administered, and of the goods and chattels;

lands and tenements of the defendant, George W. Taylor; and that the sheriff of Jefferson county, or other sheriff collecting any moneys on said execution, do pay the same into the registry of this court in the manner above provided; and that the sum of fifty dollars is hereby allowed Daniel L. Oakley as compensation for his services as Examiner in this cause, the same to be taxed against the defendants as aforesaid as costs herein; and that the Clerk of the Circuit Court of Jefferson county do tax the other costs of these proceedings.

Done, ordered and decreed at Chambers in Tallahassee, Florida, on this twenty-fourth (24th) day of December, A. D. 1880.

The other facts are sufficiently stated in the opinion.

*S. Pasco in pro per* for Executors and Executrix of Asa May.

1. The first error complained of is that complainant had an ample remedy at law, which is not insisted upon.

2. The second error is in substance to the extent that Alvin May used the insurance fund in paying his private debts. There is no equity found in complainant's bill. The pleadings and evidence show that when Alvin May took the insurance upon his wife's life he was in fact insolvent, whatever amount was paid in premiums was paid with his money and credit, and, if so, the policy in equity belonged to his creditors. If it was the intention of the insurer to divert a part of his estate to his daughter by the device of this insurance policy such intention was unjust to his creditors, but whatever his intention was his subsequent acts were in part at least honest, for the bill states that a part of the proceeds of the policy were paid to his creditors, and the proofs made by complainant herself establish the fact that all or nearly all of the fund was thus paid out to

the creditors as soon as he received it, and it is manifest that they were preceding and not subsequent creditors ; and it is further proved that Alvin May was heavily in debt, if not hopelessly insolvent, for years before the policy became payable and at the time.   The only premium that was ever paid upon it was paid in the same year that his wife died.   Which payment was made through Mr. Perkin's house, and so far as his conduct was in accordance with equity a court of equity will not make the estate of his surety suffer by making it responsible for the amounts thus honestly and equitably paid.   The payment of the proceeds of this policy to complainant would have been a fraud upon the creditors of Alvin May. These creditors, by proper proceedings, could have had Alvin May declared a trustee as to the policy for their use and benefit, and have compelled the payment of this fund to them.  Thomp. Dig., 215.  The act exempting insurance policies from claims of creditors was not passed till 1872. Chap. 1864; Bump on Fraud. Con., 272; Am. Leading Cases in Eq., 16 Wis., 95, 102.

If Alvin May did voluntarily what this court would have compelled him to do, the estate of his surety should not suffer, and this court having all the parties before it in these proceedings is competent to do exact justice in the premises.

It is well settled that in such cases the measure of damages is the policy and not merely the amount of the debtor's estate that was invested in it.  Bump on Fraudulent Convey., 594; May on Ins., 590, §391 ; Stokes vs. Coffee, 8 Bush., 533.

Asa May's estate now belongs to his creditors and heirs, and it is inequitable to divert it from them to pay Alvin May's daughter for an asset of his which went to pay his debts instead of as a bounty to her, he merely acted justly

to his creditors in the premises instead of generously towards her. Asa May's estate is liable according to the pleadings and proofs for more than $2,000, which Alvin May's estate should pay or assist in paying, and to this extent this fund should be held responsible for the protection of the interests intrusted to these executors. A reference should have been ordered to ascertain these amounts.

3. There are grave doubts as to whether Alvin May was ever legally appointed as guardian of the property of his said daughter, and as to the legality of the bond as a guardian bond, and if the sureties were liable at all thereunder : there is nothing in the circumstances of this case to extend that liability beyond the strict legal rights of the complainant.

4. If the estate of Asa May is declared liable after the examination of the defence set up, for any or all of the insurance fund, then the court should have ordered an account and not have proceeded to a final decree in the absence of an account, and the errors marked 3–10, mentioned in the petition of appeal, grow out of this action of the court. 1 Story Eq. Jur., S. 45, *seq.;* Adams' Eq., 674, 380 ; 3 Black. Com., 453 ; 2 Danl. Chy. Pr., 1221 ; Dubourg vs. U. S., 7 Peter, 625 ; 1 Danl. Chy. Pr., 857–8 ; Hudson vs. Trenton L. Co., 1 C. E. Green, 475 ; Sharp vs. Morrow, 6 Monroe, 300 ; Harding vs. Handy, 11 Wheaton, 103 ; Ransom vs. Doris, Administrator, 18 Howard, 295.

. . The said Alvin May supported, educated and maintained the complainant for six years and more after securing the proceeds of this insurance policy ; he paid the expenses and costs of the guardianship ; he was insolvent and unable to make the necessary outlays for these purposes, and though his generosity may have prompted him to make no charge or an entirely inadequate charge for any or all of these items the surety or his representatives has a right to de-

mand a full credit for them all at a fair valuation. He was entitled to some allowance for his services by statutory regulations if he was her guardian. He made investments for her, one of nearly $3,000, under the approval of the court. Whether any or all of the credits claimed on account of these items were allowed or disallowed does not appear. The amount of the final decree shows conclusively that no proper credit was given for them all, and perhaps all were omitted, but whether this was a clerical error, or whether the court intended to reject those not included, there is no way of ascertaining. Had there been an account the plaintiffs in appeal would have had the benefit of an exception, if any item had been improperly rejected or a mistake had been made in figures. This court cannot pass upon any of these items now. True, the evidence brings them into the record, but the Circuit Court having neither approved nor rejected them, and no exception having been taken, it would be an exercise of original and not appellate jurisdiction were this court to allow or reject any credit.

This is a bill for an account, and an account should have been ordered and not a final judgment. The rules of court and the statute mark out the course of procedure in such cases, and it has not been followed. Thomp. Dig. 464, 465 ; Rules of Court, 80, *et seq.* It may be argued that the court was not obliged to avail itself of the services of a master, that the Chancellor could do the work with his own hands. But he has not done the work himself. If he undertakes to act as master in chancery he is bound by the law and the rules, the same as the master is ; he is not above the law ; the judgment should not be for what his conscience suggests is about right, but what a fair and impartial account, stated with mathematical accuracy in accordance with equitable rules and principles, shows to be fair and just. And when the balance is struck the parties in-

terested have a right to examine the whole account and de-tect, if they can, any inaccuracy, and by proper exception bring the same to the attention of the court. The court by fixing an arbitrary amount as due without an account made by the chancellor or a master in chancery has rendered it impossible to determine whether the amount of the judgment is correct or not, and there is no presumption in favor of it being correct because the law has not been obeyed, the rule of court has not been followed. Robertson vs. Baker, 11 Fla., 230 ; June vs. Myers, 12 Fla., 314.

5. The eighth error assigned suggests also that the form of the judgment is incorrect. The court should have passed directly upon the merits of the case. Had an account been filed as an exhibit to the bill brought down to a recent date, and an admission by defendants that it was correct, or had a decree *pro confesso* been entered against them, some reason might appear for such a judgment as was rendered. The defence certainly presented some very strong equities, and the court never passed upon or noticed them : it simply ordered the payment of the money right or wrong. It made no distinction between principal and surety, it placed the estate of a surety upon the same footing as the estate of the principal in the bond, and made each primarily liable. This is not in accordance with the rule heretofore prescribed by this court. Hendry vs. Clardy, 8 Fla., 77.

6. The remaining error (11) brought to the attention of the court by petition of appeal is the taxing of costs against the plaintiffs in appeal. In a chancery cause costs are always subject to the discretion of the court. Lewis vs. Yale, 4 Fla., 441 ; White vs. Walker, 5 Fla., 478 ; 3 Danl. Chy. Pr., 15 to 20. There is nothing in this case upon which to found any harsh action. These plaintiffs could not make any payment to the original complainant until the true balance due her was ascertained ; they had no

means of ascertaining that balance; the person whose opportunity of knowing or arriving at that balance the best was Alvin May's executor, who was the said complainant's own guardian.  Had she availed herself of his services and made up an account and made legal demand upon these plaintiffs for the balance thus ascertained, and they had refused payment, a basis would have been laid for imposing the expense of ascertaining the balance upon Asa May's estate. In the absence of such action the expense of these proceedings should be borne by the fund, the condition of which the said complainant is interested in, and these proceedings being for her benefit.

NOTE.—The following additional cases are cited as bearing upon the law relating to the rights of beneficiaries in insurance policies: Clark vs. Durand, 12 Wis., 223 ; Foster vs. Gile, 50 Wis., 603 ; Landrum vs. Knowles, 7 C. E. Green, 594.

*John A. Henderson* on same side.

THE CHIEF-JUSTICE delivered the opinion of the court.

I. The first ground of appeal is that complainant has ample remedy at law.

This, however, was not urged upon the argument.  The suit is brought upon a guardian's bond against the representatives of the deceased guardian and the representatives of a deceased surety, and against a surviving surety, and involves the settlement of the deceased guardian's account. Cases of this character are peculiarly within equity jurisdiction.  Pfeiffer & Sullivan vs. Knapp, 17 Fla., 145 ; Hendry and Wife vs. Clardy, 8 Id., 77 ; see Pace, Admr., vs. Pace, infant, decided at this term.

II. The next ground of appeal is that the bill should have been dismissed, because, under the facts established,

the fund which is claimed never belonged in equity to the infant, but belonged to her father's creditors, and she was not injured by the payment of his debts out of the fund, the bill showing that he has thus disposed of it.

The father of the infant (appellee) was her guardian, appointed by the County Court. This fund is the proceeds of a policy of insurance obtained by him for her benefit upon the life of his wife, the mother of the appellee. Upon his appointment as such guardian in 1870, the wife having died, he collected the money due by the policy and rendered to the County Court in 1874 and in 1876 accounts showing the amount of the fund in his hands, which accounts were duly approved by the court.

The sureties of the guardian were Asa May (now deceased) and George W. Taylor. The defendants, by answer to the bill, allege that Alvin May (father of appellee) obtained the policy of insurance by means of his own money and credit ; that at the same time he was largely insolvent, one of his creditors being Asa May, who is one of the sureties upon the guardian's bond ; and that Alvin May, on receiving the proceeds of the policy in 1876, applied the money to his own use in paying his debts, &c.

Defendants thereupon insist that Alvin May, being thus insolvent, it was a fraud upon his creditors to invest the money [premiums] in a policy of insurance for the benefit of his child and as a settlement upon her, which money belonged in equity to, and should have been paid to, his creditors.

Upon this ground they insist that the ward should not recover the proceeds out of the sureties, the principal (the guardian) having died insolvent.

It does not appear from the pleadings or proofs that any of the money received by Alvin May as guardian was paid out upon any indebtedness existing against him at the time

of taking out the policy or payment of premiums thereon. Indeed, the date of the policy does not appear.

In March, 1870, Earle & Perkins paid premiums on three policies of insurance, (including the policy in question,) at the request of Alvin May, and for the money advanced they obtained a judgment against him in 1872, which remains unpaid.

How much, if any, of this sum was paid as a premium on the policy in question is not shown. Part of the premiums was paid out of the proceeds of the policy.

After the money became due on the policy in favor of the appellee Alvin May was appointed her guardian, and Geo. W. Taylor and Asa May, (whose representatives now resist a recovery on the bond of the guardian, on which he became a surety,) knowing the origin of the fund, solemnly covenanted with the infant that she was entitled to and should have the benefit of the proceeds of the policy. If Asa May was a creditor of Alvin May at that time, as is alleged in the answer of his representatives, was he not by thus joining in the covenants of the bond estopped to set up that the small amount paid as premium on the policy was an unconscionable advancement or settlement in favor of the daughter and a fraud upon him as a creditor?

The answer admits that there was no fraudulent intent. Asa May and Taylor (co-surety) became bound with Alvin May, the guardian, to account to the ward for so much money. Could Alvin May have depended upon the ground here set up by the sureties? The sureties on the bond, as well as the guardian, are estopped by the recitals therein. 3 Wait's Actions and Defences, 575; White vs. Weatherbee, 126 Mass., 450.

III. However the case may be as to the rights of other existing creditors, (i. e. creditors of Alvin May at the time of procuring the policy or payment of premiums,) the

question whether fraud may be imputed from the fact of his paying the premiums while insolvent, can hardly be entertained as a defence against a recovery upon the guardian's bond.

There is no creditor's bill here. The defendants have answered, but have not filed a cross-bill or creditor's bill asking affirmative relief as to the disposition of the fund. In Stokes & Son vs. Coffey, 8 Bush., 533, in which the rights of creditors were involved and adjudicated, a cross-bill (or " cross-petition," as it is called,) was filed and prayed to subject the amount received by the widow and brother in whose favor the life of the insolvent intestate had been insured to the payment of the defendants' claims. Under this cross-petition the court took cognizance of the matter and decreed in part in favor of the creditors. Says Bliss on Life Insurance, §318 : " If the circumstances are such that creditors of the person who paid the premiums have any claim on the money they must assert that claim by a creditor's bill in the same manner that they would follow any other property which their debtor has put out of his possession. Such seems to be the accepted rule, though the express adjudications are not numerous."

The author cites McCord vs. Noyes, 3 Bradf., 139 ; Succession of Hearing, 26 La. An., 326 ; Suc. of Kugler, 23 La. An., 455.

IV. It is urged, however, that the guardian had used the money received in satisfying his creditors. The testimony shows that he paid out the money to some persons to whom he was indebted in 1876, and in the prosecution of his business, but it does not appear that these persons were his creditors *when the premiums were paid.* Certainly subsequent creditors were not defrauded by payments of premiums made by him prior to his becoming indebted to them.

There is nothing in the case tending to show that the persons to whom this insurance money was disbursed had any legal or equitable claim upon it; or that the payment of the premiums as a gift to the daughter or for her benefit could be treated as a fraud against them. Russell vs. Hammond, 1 Atk., 14; Sexton vs. Wheaton & Wife, 8 Wheat., 229.

In no aspect can it be well insisted that a recovery upon this bond should be defeated by reason of the alleged indebtedness of Alvin May. If there may be equitable claims against the fund they must be asserted by proper parties and by other proceedings.

V. It is claimed that Alvin May, the guardian, made an investment in behalf of his ward of the sum of $2,956.30 by purchasing a note and mortgage made by himself some time before, and having the same assigned to her, and that the amount of this mortgage debt should be charged to her and credited in the account to the late guardian.

The testimony in regard to the assignment to her of this mortgage is at least calculated to throw suspicion upon the transaction.

There is evidence tending strongly to show that Alvin May had *paid* this debt long before the assignment of the same to the ward; and also that the property mortgaged had been sold under a prior judgment lien. There is nothing to show that this "investment" was sanctioned by the court. Act of November 1828, McClellan's Dig., 94, §63; Moore & Montford vs. Hamilton, 4 Fla., 112, 117; 7 Fla., 44; Sanderson's Administrators vs. Sanderson, 17 Fla., 820, 861.

If there is anything to be made out of that mortgage these defendants will doubtless avail themselves of it. They cannot require the ward to pursue the pending foreclosure litigation. They were instrumental in procuring

the assignment for their own supposed benefit and protection.

VI. Appellants insist that the decree was erroneous because it gives no idea of the rulings of the court upon the various issues raised by the pleadings; that no account was taken, though an account was prayed for; that the sureties of the guardian are only liable for a balance found due after an account stated; that the decree was far too large an amount; that by the peculiar and unusual mode adopted of arriving at the amount the appellants were prevented from making exceptions; that they had a right to have all the items set forth at length so that proper exceptions could be framed and a thorough examination had of the whole matter.

This suit was brought to establish the liability of the guardian and his sureties upon the guardian's bond, and to obtain an accounting to ascertain the amount due and for a decree acordingly. The defence set up by the sureties to defeat a recovery, to-wit: that the investment was made by an insolvent debtor as a settlement upon his daughter, and was fraudulent as to his creditors, we find not to be a valid defence in behalf of the defendants in this suit.

The Chancellor did not, in words, pass upon and decide this question, but in finding that the defendants were liable upon the bond for the amount of the proceeds of the policy of insurance, less certain allowances and disbursements, he held that the answer did not set up a defence to the bill. We cannot find any error in so holding, for we have come to the same conclusion.

As to the conclusion whether the Chancellor should have referred the testimony to a master to state an account instead of rendering a decree directly upon the testimony the general rule is that when " the suit involves matters of account the action of a master should be had in the inferior

court, and the items admitted or rejected should be stated, so that exception may be taken to the particular items or class of items, and such a case should be brought before this court on the rulings of the exceptions by the Circuit Court.

Lessee of McCall vs. Carpenter, 18 Howard, 297. That case involved matters of long complicated accounts into the examination of which the court would not enter. See also Harding vs. Handy, 11 Wheat., 103, 126 ; Hudson vs. Trenton L. & M. Co., 1 C. E. Green, 475.

A reference to a master for that purpose was the general practice, in which, after disposing of questions of pleading and directing issues, the master was decreed to take testimony and report thereon. In the case last referred to the court remarks, after citing authorities, " these cases settle the practice that the court will not, at the *original hearing*, as a general rule, examine or decide whether particular items of the account shall or shall not be allowed, and that evidence for that purpose, in strictness, is inadmissible. But the principle is not of universal application, and must depend in some measure upon the nature of the proceedings." There is no rule absolutely requiring the reference to a master. This is done for the convenience of the court. The statute does not require it, but provides that the testimony may be taken in open court or in vacation, or an examiner may be appointed to take testimony under rules to be prescribed. Th. Dig., 466, 461; McC. Dig., 168.

We examine the record to find whether a reference to a master and his report was here necessary to an understanding of the questions involved and to making a proper decree. In 1874 and again in 1876 Alvin May as guardian, as is alleged by complainant, rendered his accounts to the County Judge, charging himself with the amount of the insurance money and with interest thereon, and charging his ward with the disbursements paid on account of costs in the matter of the guardianship, with her board

and other expenses, and with commissions for receiving and caring for the fund. It was objected that there was no competent proof that Alvin May rendered these accounts to the County Judge. The testimony shows that the first account showing the amount due from the guardian to the ward ($5,439.20) up to September 3, 1874, was in the handwriting of Alvin May the guardian, and the affidavit of its correctness signed by him and sworn to before the County Judge.

This paper was found in the office of the Judge, though not marked " filed."

The second account in which the guardian is charged with the foregoing balance due September 3, 1874, and $812.02 interest to August 10, 1876—total, $6,251.22, and credits to him up to August 10 sundry sums amounting to $354.58, showing a balance then due from him to the ward, $5,896.64, was found in the Judge's office, and recorded by him in the record of accounts. There was no file mark on this paper, but an account of record immediately preceding it in the record book was sworn to July 28, 1876, and an account following it was sworn to September 1, 1876. An order appears of record under date of 28 August, 1876, signed by the County Judge as follows: " In the matter of the estate of Eva Lee May, a minor, &c., of Alvin May guardian. This day this cause came on to be heard upon the account of Alvin May as guardian of Eva Lee May, a minor, he having filed the said account with the proper vouchers therein, all of which having been duly examined by the court and appearing to be correct it is ordered that the said account be and the same is hereby in all things confirmed and allowed. Done and ordered this 28th day of August, A. D. 1876."

This order necessarily refers to the account *found of record*, and shows that Alvin May, the guardian, rendered the account and produced vouchers, which were duly examined

and found to be correct, whereupon the account was confirmed and allowed. The last account refers to the account previously rendered, and the order therefore reaches and confirms it also. We can only conclude from all this evidence that Alvin May as guardian appeared in person before the Judge and rendered the account, proved its correctness to the satisfaction of the Judge, who rendered his judgment accordingly.

The complainant, if any one, had reason to complain of the guardian's account in that he charges himself with interest in gross for a term of years instead of making annual rests, thus producing a much smaller sum than she was entitled to.

It is worthy of remark here that the above-mentioned mortgage appears to have been assigned to Eva Lee May under date of January 1, 1872, and proved for record before the Clerk January 4, 1873, and yet the guardian makes no mention of it in his accounts rendered to the Judge. Had he regarded it as a *bona fide* transaction he must have charged it in his account.

The first account rendered to the County Judge charges the ward—

| | |
|---|---:|
| For her board four years | $800 00 |
| Interest on same | 96 00 |
| Commissions 6 per cent | 54 00 |
| Fees of Grumwell, County Judge | 10 50 |
| "Additional compensation" 4 years | 200 00 |
| Amount September 3, 1874 | $1,160 80 |

The second account, August 10, 1876, charges her with—

| | |
|---|---:|
| Payments to Bellinger, Mosely and McGee | $18 50 |
| J. Bell, County Judge | 8 00 |
| Interest on above amounts | 2 08 |
| Twenty-three months board | 276 00 |
| Expenses in clothing, &c | 50 00 |
| Amount August 10, 1876 | 354 58 |
| Making a total of | $1,515 38 |

From all which it appears that the sum of $1,478.38 was charged to her for board, clothing, commissions, " additional compensation " and interest, and $37 for Judge's fees, &c.

These charges for board and clothing, considering that the father was in law and duty bound to support his infant daughter, and that she was under no legal obligation to pay him for it, were certainly liberal, and his sureties have nothing to complain of. These amounts are doubtless. largely in excess of the premiums paid or promised to be paid upon the policy of insurance.

They are also quite equal to the estimate made by the witness (Grantham) of a fair compensation for her support.

The father was in better condition to know what the expenses actually were, and to charge accordingly.

The last account was brought down to August 10, 1876, at which time the balance struck by the guardian against himself was - - - - - - - $5,896.64
Interest to date of decree, 4 y'rs, 5 mos., 14 d'ys, 2,062.50
$7,959.14

The decree was rendered 24th December, 1880, for the sum of $7,891.20.

There is no proof of any expenditure on behalf of the ward which is not embraced in the guardian's accounts.

VII. The accounts of the guardian having been made to the County Judge and duly passed upon and allowed by him, as appears by the record, this is at least *prima facie* sufficient to charge the sureties for the amount found due. Vance's Admr. vs. Vance's Distributees, 5 Mon., 521 ; Scott vs. Dorsey's Exrs., 1 Har. & J., 227 ; Spedden vs. The State, 3 Id., 251 ; 2 Phill. Ev. C. & Hill's Notes, 83, 4 Am. Ed.

The preliminary questions raised by the answer having been disposed of by the court in adjudging that complain-

ant was entitled to recover, nothing remained to be done but to compute the interest upon the amount found to be due by the report of the guardian to the County Judge and his adjudication thereon. There was nothing else for a master to do if the matter had been referred to him. The court made the computation, and decreed accordingly. If the cause had been referred to a master the direction must have been simply to compute the interest and add it to the principal, and report the result. Any exception to the report must have been only to the correctness of the computation. In a matter so plain as this it would have been a mere ceremony, productive only of additional delay and costs, to employ a master to do what the court found it convenient to do without one. In the case of Robertson vs. Baker, 11 Fla., and June vs. Myers, 12 Fla., the circumstances were such that it was impossible to proceed without proper statements of accounts, and the appellate court sent them back to obtain intelligible information, the master's reports being unintelligible.

The testimony was taken by an examiner under a decree made after the cause was at issue, requiring him to take the testimony of witnesses and such other testimony as might be offered by the parties, and report the same to the court. The cause was brought to a hearing upon "the pleadings and testimony therein" according to notice given by the solicitors for complainant to defendants' solicitor, upon a day set therefor by consent of the respective counsel, at which time the cause was argued by said counsel and the decree was thereupon speedily made. No suggestion appears to have been made for a reference to a master. No motion for a rehearing for that purpose, or any other purpose, was made by counsel for appellants.

The decree was entered December 27, 1880, and on the 27th day of August, 1881, the notice of appeal was served

in behalf of the executrix, &c., of Asa May.  Taylor appealed December 6, 1881.

While it may not be necessary as a rule to apply for a rehearing before the Chancellor before appealing, in order to bring before this court any question that may arise upon the record affecting the decree, where the appellants entirely failed to move in any manner for a reference to a master to state an account and delayed nearly a year before taking an appeal, the entire merits of the cause having been argued and submitted to the Chancellor upon a final hearing, it would require a clear demonstration that he erred upon the merits of the case to induce this court to reverse the decree upon the ground that there had been no master's report stating an account.  But whereupon the whole case it appears, as it does here, that a master's report must inevitably have produced a result quite as favorable to the appellants as that found by the Chancellor, we can see no merit in this ground of appeal.

Neither do we think it was absolutely necessary (though it may have been proper) for the Chancellor to have stated an account either before decree or in the body of it in this case, because upon the facts and the law there is not the least difficulty in determining what decree should be made. See Field *et al.* vs. Holland, 6 Cranch., 8, 22.

VII. The appellants complain that the costs of the case should not have been charged against them; that they could not make payment until the true balance was found and they had no means of ascertaining that balance, which was best known to Alvin May's executor, who was the plaintiff's guardian, and that the balance should have been ascertained and demanded before bringing suit.  And they insist that the fund in controversy should pay the costs of the suit.

We think under the circumstances of this case the Chan-

cellor did not abuse his discretion in awarding costs against the defendants. They had equal opportunity with complainant to ascertain what amount was due to her.

The evidence was matter of record. They resisted a recovery, and the great bulk of the costs and expenses was made by them in attempting to establish certain facts not constituting a defence in law or in equity.

There had been no tender by the defendants.

The general rule which gives the costs of. the suit to the victorious party and throws them upon the unsuccessful party applies equally to cases in which parties are suing or depending in *autre droit* and to those in which they are *sui juris*. 2 Dan. Chy., 1382.

This rule is, however, not always applicable to trustees and representatives who necessarily or fairly sue or defend for the protection of estates and funds; in such cases the estate or fund will be chargeable; but the court will not allow them to take advantage of this rule in their favor by attempting to defeat the claims of a *cestui que trust* by setting up an improper defence. 2 Dan. Chy., 1410, 1415.

"Where, from the uncertain state of the account the accounting party is not able to make a specific tender of the balance due from him, yet if he has shown a willingness to render an account, the court will on final adjudication *take such willingness into consideration*, and exonerate him from paying costs to the other party.; although the result may be that the balance is against him." Id., 1396; Adams' Equity, 393.

The statutory rule in this State is that costs shall be paid by the losing party in a suit, and we can find in this case no reason to charge them upon the complainant's estate.

Appellants further allege for error in the decree that it is inappropriate and not according to the prayer of the bill, but it is in form similar to a judgment at law.

The bill prays for a judgment against the defendants (the executor of Alvin May, the executrix and executor of Asa May, George W. Taylor) for the amount found to be due the ward, and that they be decreed to pay it, and for execution in default of such payment, as in cases at law. The decree follows the prayer of the bill in this respect, and is in the usual form, corresponding to the requirements of the statute and the rules of court.

It is also complained that the decree directs execution against all the defendants alike, not providing that the money shall be made out of the estate of the principal, Alvin May, before resorting to the property of the sureties.

This ground of error was assigned by an amendment of the petition of appeal some time after it had been filed.

No objection was interposed in the court below to the form of the decree.

The statute directs that the officer holding an execution against principals and sureties shall " make the money out of the property of the principal, unless he is insolvent or has no property, in which case the execution may proceed against the property of the sureties."

While it would have been proper to frame the decree with reference to the directions of the statute for the guidance of the officer holding the execution, as was suggested by the court in Hendry vs. Clardy, 8 Fla., we cannot regard the omission of this direction as error for which a decree should be reversed. The statute gives that direction to the officer. The court in Hendry vs. Clardy did not hold the omission to be an error affecting the validity of the decree, but made the suggestion " for the guidance of the Chancellor " that " it will be proper so to frame the decree that it shall be enforced against the sureties only in the event that the money cannot be made out of the principal."

In the present case it is established to our satisfaction, as it was to the mind of the Chancellor, by the bill, answers and proofs, that the principal was insolvent, and his estate had and has no assets whatever. But if the parties, or either of them, desire it the Chancellor will add the direction suggested, by an order to be duly entered.

The decree is affirmed with costs.