SWACKHAMER ET AL., APPELLEES, *v.* FORMAN ET AL., APPELLANTS.

(No. 284—Decided February 12, 1971.)

Mr. *Roy M. Huffer, Jr.*, and Mr. *Thomas A. Heydinger*, for appellees.

Mr. *Earl A. Smith* and Mr. *John S. Street, Jr.*, for appellants.

GRAY, P. J. This case is in the Court of Appeals from a judgment of the Court of Common Pleas of Pickaway County finding that the will of M. E. Swackhamer which had previously been admitted to probate by the Probate Court of that county was not the last will and testament of M. E. Swackhamer, deceased.

A motion was filed by the surviving spouse, Ida B. Swackhamer, individually and as coexecutor, and E. A. Smith, coexecutor, for a judgment notwithstanding the

verdict and for a new trial. The trial court overruled both motions. The movants, feeling aggrieved by this result of the proceedings in the trial court, filed their notice of appeal and assigned the following errors.

"ASSIGNMENT OF ERROR No. 1: The trial court erred in not directing a verdict in favor of the propronents on their motion at the close of the contestants' evidence.

"ASSIGNMENT OF ERROR No. 2: The trial court erred in not directing a verdict in favor of the proponents on their motion at the close of all of the evidence.

"ASSIGNMENT OF ERROR No. 3: The trial court erred in charging the jury on the question of testamentary capacity.

"ASSIGNMENT OF ERROR No. 4: The court erred in charging the jury on the question of undue influence.

"ASSIGNMENT OF ERROR No. 5: The court erred in charging the jury on the issue of whether or not the Will that was executed was the one intended to be executed by the decedent.

"ASSIGNMENT OF ERROR No. 6: The verdict is against the manifest weight of the evidence and is contrary to law."

We believe that the second assignment of error is well taken. The theory of contestants, appellees herein, was that the will admitted to probate was not the will the testator intended to sign. That also appears to have been the theory of the trial court when it denied the two motions of the proponents of the will. The trial court favored us with a written opinion in which it is stated the following:

"The court first notes that there was [sic] no instructions given as to fraud, and the charge was directed entirely to the question of whether this was the will which the decedent intended to sign. An issue was raised by testimony of the contestants to the effect that the decedent just a few days prior to his death had indicated to various persons that he had made a will where by provisions were made for his children. The will which had been admitted to probate left his entire estate to his surviving spouse."

Let us examine the record. The decedent was 74 years of age at the time of his death. His widow was approximately 85 at that time. The testator executed his will Octo-

ber 7, 1966, and died April 5, 1967. This was the third marriage for testator and the second marriage for his widow. Testator had 11 children by his first marriage and his widow had several children by her previous marriage. Testator and Ida B. Swackhamer, his widow, had been married for over 22 years. Testator had brought to the marriage relationship a four acre tract of land which was subsequently sold for $600. Mrs. Swackhamer brought two houses that were later sold for $10,000. With these assets, testator and his wife by judicious investments in real estate ran that modest amount of money into a joint estate at his death of approximately $104,000. Half of this amount stood in the name of the widow and half was appraised as assets of decedent's estate.

In the record, testator is depicted as a shrewd man of whom it was difficult to take advantage. He had little formal education and could sign his name and read in a very limited sense.

Ten of his children joined as plaintiffs in the action to set aside the will and one was joined as a defendant. Four of these children testified for contestants.

Contestants' claim is that at various times over a period of years testator had told them and others that he intended at his death for one child or another to have a specific piece of property or that they were to share in his estate. There is some evidence in the record that he stated that he wanted a niece to be the executrix of his estate and she was to take care of the widow. In substance, the record only shows that testator had made statements on various occasions that he was going to leave his property in a different manner than that in which he eventually willed it. His widow was his sole beneficiary. She was named co-executrix along with his attorney who drew the will. No claim is made of fraud, undue influence, lack of mental capacity, duress or faulty execution of the will on the part of the testator. We again direct attention to the analysis of the case by the trial judge, *supra*, as the basis and theory upon which the case was tried.

Adverting again to the record, we find that testator,

on October 7, 1966, called at the office of his attorney who had represented him for 18 to 20 years, and requested that he draft his will giving all of his property to his wife. Testator was accompanied by his wife who had the same attorney draft a reciprocal will leaving all of her property to 'estator. After the execution of the will, testator called at the office of his attorney several times a week both on social visits and for business purposes. No change was made. Testator was taken ill and admitted to the hospital on March 4, 1967. This testimony stands uncontradicted.

Thus, we see a picture of a husband and wife who had worked together for over 20 years. They started with a small amount of money and by dint of hard work, good management and fortuitous investments in real estate accumulated fair sized estates. As often happens, they went to their attorney together and made reciprocal wills giving everything each had to the other. The will of testator was executed in conformity to law and no claim is made to the contrary. It is a very simple one page will.

After researching the questions raised herein, we are of the opinion that the evidence adduced by contestants is totally insufficient to sustain the verdict of the court.

Contestants of the will contend that testator signed a will which he did not intend to sign. It was admitted to probate. They should not now be permitted to overthrow it merely by proving that declarations of the testator were inconsistent with the written provisions of the will unaccompanied by other proof that the instrument is not genuine. This is founded upon well recognized rules of evidence. The declarations that the contestants attribute to testator are merely unsworn statements, and not part of a *res gestae*, or within any of the recognized exceptions to the admission of evidence of this kind.

Parol evidence of this nature is always to be used with great caution. In general, it is the lowest species of evidence. The purported declarations on the part of the testator may be insincere or, at best, mere passing thoughts of the moment, and liable, on the part of the interested witnesses, to be misapprehended and misrepresented.

The Supreme Court in *Monroe* v. *Barclay*, 17 Ohio St. 302, at 315, 316, said:

"Restrictions are imposed upon none, but all are alike left to the exercise of their own free wills and inclinations in the disposition of their property. *The power thus given to dispose of property does not depend upon the disposition made thereof,* nor is it restricted to those who may employ it only for just and wise purposes; but all upon whom the right is conferred may use it without 'any restraint.' Indeed, it is contemplated by the statute that this is the only way in which it can be exercised. Freedom from restraint is essential to the validity of a will. So careful is the law in this respect, that it will not uphold a will that has been induced by restraint upon the testator, whether in the form of fraud practiced upon him, or any other influence that destroys the free exercise of his own will. Redf. on Wills, 524, 527." (Emphasis added.)

"He may give his property to whomsoever he pleases, and his motives or reasons therefor, so long as he is 'not under any restraint,' are matters of his own conscience, for which he is not accountable to the law. His will, executed in conformity to the statute, if it be his own, and not in any sense the will of another, cannot be invalidated, however much its provisions may be disapproved by others."

"Every will, as before remarked, is the result of influences strong enough to produce it. Since, then, it is the policy of the law to secure to every one the right to dispose of his property in accordance with his individual will, that influence alone is illegal which places the freedom of a testator's will under some kind of restraint."

We are of the opinion that declarations of the deceased prior or subsequent to the execution of the will were nothing more than hearsay, and there is nothing more dangerous than their admission, either to control the construction of the instrument or to support or destroy its validity.

When they are not part of the *res gestae*, declarations of this nature should not be admitted into evidence and should not form the basis for invalidating a will, because

their truthfulness has not been the subject of oath or affirmation. Where they are claimed to be a basis for overturning the will on the ground that they indicate the condition of mind of the deceased with regard to his affections, they are still unsworn declarations, and neither competent nor admissible evidence. Some of these declarations here were inadmissible but were admitted into evidence without objection, so we must consider them. We do not think that such declarations are sufficient in and of themselves to form any basis for invalidating a will or to prove the state of a testator's affections when the mental or testamentary capacity of the deceased is not in issue. The capacity of the testator is not in issue in this case.

The statutes of the state of Ohio have very careful and stringent provisions with relation to the making of wills and the proof of their execution. A will must be in writing (with the exception of certain nuncupative wills), signed by the testator or another in his presence and by his direction, and attested and subscribed by at least two competent witnesses according to law. The allowance of evidence of this nature would, we think, most strongly tend to break down the effect of the statutory provisions, and render the requirement of proof of the execution of wills much less certain than was contemplated by the statutes. If declarations of the deceased were admissible to attack a will, they would then, of course, be admissible to prove its validity, and there would be apt to arise a contest with regard to the number and character of conflicting declarations of the deceased which he could neither deny nor explain, and in the course of such contest great opportunities for fraud and perjury would exist. Cf. *Throckmorton* v. *Holt*, 180 U. S. 552 and 119 ALR 1359.

If declarations of a testator could be admitted to prove that his will was procured by fraud, duress, or mistake, no man's will would be safe, because the temptation to those who would seek after the testator's bounty to induce him to make declarations inconsistent with his will would be too great to resist. Furthermore, the statute re-

quiring wills to be in writing would afford little protection to testators or the objects of their bounty, if any casual statement made by the decedent could be admitted for the purpose of attacking his written testament and invalidating the will.

According to our theory of the case, in consideration of the evidence adduced, contestants could never prevail, hence final judgment shall be entered for the proponents of the will. The judgment of the trial court is reversed.

*Judgment reversed.*

ABELE and STEPHENSON, JJ., concur.