OPINION
{¶ 1} Plaintiff-appellant, Janet Lakes, appeals the decision of the Butler County Court of Common Pleas granting summary judgment to defendants-appellees, Charles Ryan and Marilyn Ryan, in an action alleging undue influence in a real estate transfer, undue influence in the execution of a will, and conversion. We affirm in part, reverse in part and remand the case to the trial court for further proceedings.
 {¶ 2} Emmett Wilder and his wife Jeanette had two biological children, Jenice McGuire and Marilyn Ryan. Jenice had a daughter in 1947, Janet Lakes. The Wilders adopted Janet when she "was in kindergarten." Wilder's wife, Jeanette, died in 1989. His daughter, Jenice, died in 1991. At Wilder's death, on November 9, 2000, he had two surviving children, Marilyn and the adopted daughter, Janet.
 {¶ 3} On April 25, 1999, Wilder transferred his farm to Marilyn and her husband Charles. Janet discovered the transfer when Marilyn and Charles evicted her from the property. In March of 2000, she asked Wilder why he transferred the farm to Marilyn and Charles. According to Janet, Wilder replied that he never transferred the farm to them and he thought he was signing a power of attorney.
 {¶ 4} Janet commenced an action claiming that the real estate transfer was void due to Wilder's lack of competence. A deposition was scheduled for Wilder; however, he died before the deposition was taken. At Wilder's death, Janet discovered that he had executed a will on May 19, 1994, which disinherited her. Janet filed a will contest contending that the will was invalid. Janet also filed an action for conversion against Marilyn and Charles for items of property they retained.
 {¶ 5} The trial court determined that no undue influence took place and that Wilder was competent to transfer his property and to execute his will. The trial court also found that no conversion took place because Janet did not request that her personal property be returned. Therefore, on April 12, 2002, the trial court granted summary judgment to appellees. Janet appeals the decision raising four assignments of error, some of which will be addressed out of sequence for purposes of clarity.
Assignment of Error No. 1
 {¶ 6} "THE COURT ABUSED ITS DISCRETION IN AWARDING THE DEFENDANTS SUMMARY JUDGMENT ON PLAINTIFF'S CHALLENGE OF A DISINHERITING WILL OF AN ISOLATED, OLD, HARD-OF-HEARING BLIND MAN."
 {¶ 7} Janet argues the trial court did not consider a wide range of inquiry into the influences bearing on the preparation of Wilder's will. She argues the trial court ignored evidence that Wilder was susceptible to undue influence. Janet claims that Marilyn and Charles had the opportunity to exert undue influence over Wilder. Furthermore, she argues they actually influenced Wilder. Janet argues the trial court ignored the effect of the undue influence upon Wilder. Janet also submits that the trial court ignored "circumstantial evidence that [Wilder's] disinheriting will was a product of undue influence."
 {¶ 8} An appellate court reviews a decision granting summary judgment on a de novo basis. See Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 105, 1996-Ohio-336. Summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. Willis Day Warehousing Co. (1976), 54 Ohio St.2d 64,66.
 {¶ 9} To challenge a will, the challenger must prove that the testator lacked the capacity to create the will. Giurbino v. Giurbino
(1993), 89 Ohio App.3d 646, 658. When undue influence is used to attack the validity of a will, a wide range of inquiry should be encouraged in order to bring all the facts and influences bearing on the preparation of the will before the trier of fact. Rich v. Quinn (1983),13 Ohio App.3d 102, 104, citing Spidel v. Warrick (1948), 83 Ohio App. 332. While a broad spectrum of evidence should be considered, the evidence sought to be introduced is nonetheless subject to the rules of evidence. See Krischbaum v. Dillon (1991), 58 Ohio St.3d 58, 66.
 {¶ 10} The elements of undue influence are: (1) a susceptible testator; (2) another's opportunity to exert improper influence; (3) the fact of improper influence exerted or attempted; and (4) the result showing the effect of such influence. See West v. Henry (1962),173 Ohio St. 498, 500. In defining what constitutes undue influence, theWest court held:
 {¶ 11} "General influence, however strong or controlling, is not undue influence unless brought to bear directly upon the act of making the will. If the will or codicil, as finally executed, expresses the will, wishes and desires of the testator, the will is not void because of undue influence.
 {¶ 12} "The mere existence of undue influence or an opportunity to exercise it, although coupled with an interest or motive to do so, is not sufficient, but such influence must be actually exerted on the mind of the testator with respect to the execution of the will in question. It must be shown that such influence, whether exerted at the time of the making of the will or prior thereto, was operative at the time of its execution or was directly connected therewith. It must be shown that undue influence was exercised with the object of procuring a will in favor of particular parties." Id. at 501.
 {¶ 13} Janet admits that she has no personal knowledge of the undue influence in the creation of Wilder's will because she had no contact with Wilder from 1994 to 1996. Janet's only evidence of undue influence over Wilder is based upon the deposition of Alberta Dietz, Wilder's caretaker from 1980 to 1994. Dietz states that Wilder told her that Marilyn and Charles physically abused him, removed all the telephones from his residence, disconnected his alarm system, withheld his medication for their own use, locked him outside of his home at night in the rain, and "terrorized" him. However, Dietz also states that "Wilder never showed any signs of mental impairment." Wilder's own alleged statements are not admissible because they are hearsay, and no exception to the hearsay rule applies. See Swackhamer v. Forman (1971),26 Ohio App.2d 72, 75.
 {¶ 14} Attorney George Jonson filed an affidavit in this matter and stated therein that "[a]t all times relevant to my representation of Wilder in regards to his codicil, including his initial inquiry, he was lucid and of sound mind and memory to dispose of his property." Jonson prepared Wilder's May 19, 1994 will and witnessed Wilder's execution of the will. Furthermore, Jonson states, "[I]n my professional opinion, [Wilder] possessed full testamentary capacity to dispose of his estate as he saw fit *** [Wilder] was able to ascertain the size and nature of his estate, his potential heirs, and the distribution desired for each heir. *** It is my opinion [Wilder's] physical disabilities did not inhibit his ability to make decisions regarding the disposition of his property." The trial court is permitted to weigh such evidence and consider it in reaching a decision.
 {¶ 15} The trial court determined that reasonable minds could come to but one conclusion, and that conclusion is that there is no credible evidence which would show any improper influence exerted by appellees, or anyone else, upon Wilder's act of executing his will. Based upon our review of the record, we find that the evidence supports the trial court's decision granting summary judgment. The first assignment of error is overruled.
Assignment of Error No. 4
 {¶ 16} "THE COURT ERRED WHEN IT FOUND NO UNDUE INFLUENCE ON THE ISOLATED, OLD, DEAF LEGALLY BLIND MAN WHO CONVEYED HIS REAL ESTATE TO ONE OF TWO SURVIVING DAUGHTERS."
 {¶ 17} Janet argues "the inference of undue influence, shown in the first assignment of error, supports her claim" that the real estate transfer was a product of undue influence. Janet claims Wilder "was tricked into signing what he thought was a power of attorney" because of his blindness. Janet also argues that Marilyn and Charles employed undue influence over Wilder to force him to cancel an annuity.
 {¶ 18} A deed executed as a result of undue influence will be set aside. Tracey v. Sacket (1852), 1 Ohio St. 54, 60. A party seeking rescission and cancellation of a deed because of undue influence or lack of capacity has the burden of proof by clear and convincing evidence.Willis v. Baker (1906), 75 Ohio St. 291, paragraph one of the syllabus. In order to make the requisite showing of undue influence, the party must prove four elements: (1) the individual in question was susceptible to undue influence; (2) another person had the opportunity to exert undue influence over the susceptible individual; (3) improper influence was exerted or attempted; and (4) the result shows the effect of such influence. See West v. Henry (1962), 173 Ohio St. 498, 500. See, also,Rutledge v. Wallace, Carroll App. No. 02AP0770, 2002-Ohio-5372 at ¶ 25, quoting Rae v. Geier (Sept. 20, 1996), Darke App. No. 1393.
 {¶ 19} The real estate transfer took place at Jonson's law office. Jonson stated in his affidavit that Wilder executed a general warranty deed transferring his real estate to his daughter Marilyn and his son-in-law, Charles, on April 25, 1999. Jonson also stated, "I am unaware of any type of undue influence or duress exerted by [Marilyn] over [Wilder] during any part or my representation of him regarding his *** 1999 deed transferring title to his real estate to [Marilyn]. *** [Wilder's] physical disabilities did not inhibit his ability to make decisions regarding the disposition of his property."
 {¶ 20} Furthermore, Deanna Oliver stated in her affidavit that she was employed at Jonson's law office on April 25, 1999. Oliver stated that she witnessed Wilder sign the deed himself. She did not witness Wilder under any pressure to execute the deed. She indicated Wilder "was sure as to what he was doing during the execution process." As, Oliver stated she remembers Marilyn telling Wilder to "do whatever you want to do." Oliver said that based on her observation "Wilder executed the deed of his own choice and was of sound mind." There is no credible evidence that would show any improper influence exerted or attempted by appellees, or anyone else, upon Wilder's act of transferring his real estate.
 {¶ 21} Likewise, the conveyance of an annuity resulting from undue influence will be set aside. See Harding v. Handy (1826), 24 U.S. 103,110-111, 6 L.Ed. 429. On March 17, 2000, Wilder contacted Virgil Lovitt II, to request the surrender of his annuities. Lovitt is the State Farm agent who sold Wilder the annuities. Lovitt stated in his affidavit that Wilder was "strong willed and clear minded" and he was "certain that [Wilder] executed the request to surrender annuities *** knowingly, voluntarily with sound mind and without undue influence or duress." The annuities listed Wilder as the primary beneficiary and Janet as the secondary beneficiary. Wilder executed the request to surrender in order to pay for his nursing home expenses. Janet stated in her affidavit that she had no evidence that the proceeds from the surrendered annuities were used for anything other than Wilder's expenses. Therefore, there is no credible evidence that would show any improper influence exerted or attempted by appellees, or anyone else, upon Wilder's act of surrendering his annuities.
 {¶ 22} Based upon our review of the record, we find that the evidence supports the trial court's decision granting summary judgment. The fourth assignment of error is overruled.
Assignment of Error No. 3
 {¶ 23} "THE TRIAL COURT ERRED WHEN IT CLAIMED THAT THE PLAINTIFF DID NOT CHALLENGE THE DECEMBER 31, 1992 WILL."
 {¶ 24} The trial court found that Janet failed to challenge a will Wilder executed on December 12, 1992. Janet argues she did not challenge the December 31, 1992 will because the "1994 will" was the will in probate. Therefore, she was not required to challenge the December 31, 1992 will until the 1994 will was found to be invalid.
 {¶ 25} The Ohio Rules of Civil Procedure govern all aspects of a will contest action unless otherwise provided by law. See R.C. 2107.72(A). There is nothing in the Ohio Revised Code supplanting Civ.R. 56 in these proceedings, therefore, summary judgment would be an appropriate method by which to resolve a will contest. If summary judgment is granted, then an appellate court will analyze an appeal therefrom under a de novo standard of review. See Nelson v. Daniels (Sept. 5, 1995), Lawrence App. No. 94 CA 29 at 2.
 {¶ 26} A will can be revoked by a new will or codicil executed in writing with the same solemnities as the old will. See Ridenour v.Callahan (1906), 19 Ohio C.D. 65. The December 31, 1992 will was presumed valid until it was revoked by the 1994 will. The 1994 will was admitted to probate and it is presumed valid until proven otherwise. The initial burden in the contest of a will admitted to probate is on the contesting party to prove the will invalid. See Kirschbaum v. Dillon,58 Ohio St.3d at 64.
 {¶ 27} As observed in our resolution of Janet's first assignment of error, Janet did not meet her burden of proof challenging the validity of the 1994 will in probate. The trial court found that Wilder was competent to create the will and was not under any undue influence. The evidence in support of this decision includes the affidavit of Jonson who stated that Wilder "was lucid and of sound mind and memory to dispose of his property." Furthermore, Jonson stated, "Wilder was able to ascertain the size and nature of his estate, his potential heirs, and the distribution desired for each heir. *** [Wilder's] physical disabilities did not inhibit his ability to make decisions regarding the disposition of his property."
 {¶ 28} Janet is correct in asserting that there was no need for her to challenge the December 31, 1992 will, as suggested by the trial court, because it was not in probate. However, the trial court's statement is irrelevant as the trial court proceeded to find the 1994 will was valid, which finding resulted in the revocation of the December 31, 1992 will. Therefore summary judgment was appropriate. The third assignment of error is overruled.
Assignment of Error No. 2
 {¶ 29} "The Court Abused Its Discretion When It Determined That The Plaintiff Did Not Demand Her Property Held By The Defendants, And Thus Dismissed The Conversion Claim."
 {¶ 30} Janet argues Marilyn converted property and the trial court's decision to the contrary was against the evidence. Janet contends that she did make a request for property and the request was denied. Furthermore, Janet argues if she did not make a request, her complaint for the property can be treated as a demand.
 {¶ 31} Janet maintains that she demanded a number of Wilder's checks that Marilyn and Charles converted in order to defraud the heirs of Wilder's estate. However, Marilyn and Charles are the sole beneficiaries under Wilder's only valid will. Therefore, as the executrix, alternate executor, and sole beneficiaries of Wilder's estate, Marilyn and Charles are entitled to retain possession of the checks. Cf. McKelvey's Adm'r. v. McKelvey (1911), 14 Ohio C.C. (N.S.) 331.
 {¶ 32} Additionally, Janet argues that she demanded the return of personal property, including jewelry, her mother's china, a couch, a sewing machine, a vacuum cleaner and other household furnishings from Marilyn. Janet maintains the request was denied. However, Marilyn and Charles stated that they recognize Janet's right to all of the items except a wedding band and diamond. Marilyn and Charles stated that Janet might retrieve the items at her convenience.
 {¶ 33} In order to recover for conversion, there must be a demand for the return of the property from the possessor, and a refusal to relinquish possession. See Tabar v. Charles's Towing Service, Inc.
(1994), 97 Ohio App.3d 423, 428. Marilyn and Charles, with two exceptions, have not refused to relinquish possession of Janet's personal items. Therefore, there can be no conversion of personal items that Marilyn and Charles have not refused to relinquish to Janet. See id.
 {¶ 34} The only items Marilyn has refused to relinquish possession of are a wedding band and diamond. In Marilyn's deposition she was asked, "Janet has asked for her wedding band and diamond, the one that belonged to your mother, and you refused to give it to her; is that not true?" Marilyn answered, "[t]hat's correct." Marilyn explained that she retained the band and diamond because Janet borrowed $3,200 and "made this arrangement with [Wilder] for collateral. When [Janet] paid the money back, she could have the ring back." However, the band and diamond were returned to Janet at some point after the loan. Marilyn then asked Janet to return the items to her for safe keeping because Janet stored the ring in her purse.
 {¶ 35} Personal property may be pledged to secure a debt. SeeKraay v. Gibson (1904), 15 Ohio Dec. 323, 325. Article 9 of the Uniform Commercial Code "applies to all consensual security interests in personal property." Union Investment Inc. v. Midland-Guardian Co. (1986),30 Ohio App.3d 59, 61. Perfection of the security interests in personal property occurs by taking possession of the collateral. See R.C.1309.313(A). However, perfection continues only while the secured party retains possession. See R.C. 1309.313(D). Therefore, the security interest in the personal property may be released by returning the property to the owner.
 {¶ 36} Upon review of the record we find that genuine issues of material fact exist as to whether the security interest in the band and diamond was released when they were returned to Janet. This in turn creates a question of fact as to whether Marilyn's refusal to relinquish them was justified. Therefore, summary judgment was improperly granted regarding conversion of the band and diamond. The second assignment of error is well-taken and the matter is remanded to the trial court for further proceedings.
Affirmed in part, reversed in part and remanded for further proceedings.
POWELL and VALEN, JJ., concur.